Jon R. Schlueter 106302
Peter B. Schlueter 155880
SCHLUETER & SCHLUETER
Meserve/ Sanborn Buliding, 2nd Floor
108 Orange Street, Suite 8
Redlands, CA 92373
Voice: (909) 381-4888
schltrlegal@aol.com
peterinla@aol.com

Attorneys for Plaintiffs: Davis, Cilley

FILED
2013 MAR 14 PM 3:57
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Joann Davis, an individual, and Paul Cilley, an individual<br><br>Plaintiffs,<br>v.<br><br>The United States of America, Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, Gary Lofgren, and Does 1through 10<br><br>Defendants. | ED CV 13 - 0483 VAP(DTBx)<br>Case No.:<br><br>**Complaint for Damages**<br><br>Federal Tort Claim Act Claim (I-VII)<br>Fed.R.Civ.Proc. 41(g) (VIII)<br>*Bivens* (IX-XII)<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

The plaintiffs by and through their counsel, sue the United States of America, and for his complaint state:

**Introductory and Jurisdictional Allegations**

1. Plaintiffs seek damages arising from the United States of America, for claims cognizable under the Federal Tort Claims Act. (I-VII)

2. Plaintiff Davis seeks return of her property in a claim cognizable under Fed.R.Civ.Proc. 41(g). (VIII)

3. Plaintiffs seek damages arising from Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, Gary Lofgren, and

Does 1through 10, for claims arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (IX-XII)

4. Under U.S. Const. Art. III, § 2, this Court has jurisdiction because the rights sought to be protected herein are secured by the U.S. Const. Amends 4 & 5. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, and federal common law, and 28 U.S.C. § 1346.

5. The unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Central District of California.

6. Venue of the Court is appropriate under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claim occurred in the City of Lake Elsinore, County of Riverside, State of California.

7. A claim for damages pursuant to the Federal Tort Claim Act was submitted to the United States of America in a timely fashion. The claim is attached hereto. The United States did not respond to the claim.

**Parties**

8. The United States of America is the federal government, of which NASA is an agency.

9. Joann Davis and Paul Cilley are natural persons residing in Riverside County, California.

10. Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, Gary Lofgren, and Does 1through 9 are natural persons, employees of the United States of America and NASA, and at all times were acting within scope of their employment by the United States of America and NASA. Each of these actively participated in the wrongful acts of the others.

11. Does 1through 10 are sued as fictitious persons. Does 1-9 are employees of the United States of America. Doe 10 is an informant, and agent of

the United States of America. Their names and identities are unknown to Plaintiffs. When their identities are discovered by Plaintiffs, this pleading will be amended to allege their true names.

**General Allegations**

12. These initial facts provide background for the incident on May 19, 2011, described below.

a. *Joann Davis and her deceased husband: who they are*.

13. Joann Davis was, at the time of this incident (May 19, 2011), a 4' 11", 74-year-old retiree. She had retired from North American Rockwell in 1992. She has not been employed by any aerospace contractor or any government agency since that time. Her husband Robert Davis had also been an employee at North American Rockwell until his death on February 5, 1986. These facts were known and were verifiable by NASA and the United States of America and the individual defendants.

14. Robert Davis was a engineer who had worked on various space programs, including the Apollo missions, for North American Rockwell. At no time did he nor Joann Davis work directly for NASA. That is, they were not NASA employees. Neither had access to the NASA Lunar Receiving Lab where moon rocks and lunar samples were kept. These facts were known and were verifiable by NASA and the United States of America and the individual defendants.

b. *Robert Davis is given awards for service*.

15. In the early 1970s, Robert Davis received two awards, both fashioned as paper weights, that were meant to recognize his contributions in the Apollo 11 moon landing program. One of these Lucite (or like plastic/polymer) paperweights contained a small portion of the Apollo 11 heat shield. The other was said to have contained small fragments (the size of pieces of rice) of lunar

material (a.k.a. moon rocks) brought back by the Apollo 11 mission. Plaintiffs are informed and believe that NASA and its administrators authorized the practice of giving out these awards and that this practice was widespread. These moon rocks given out were *not* part of the "Goodwill" moon rocks provided by the United States to other nations and our various states. These facts were known and were verifiable by NASA and the United States of America and the individual defendants.

16. The Lucite (or like polymer) encased heat shields and moon rocks were community property under California family law as they were acquired during the course of Robert and Joann Davis' legal marriage and stayed with the estate/community when Robert Davis passed.

c. *NASA's practice of giving such awards*.

17. Plaintiffs are informed and believe that in the late 1960s or early 1970s, NASA approved the practice that allowed small chips of moon rocks and/or pieces of spacecraft heat shields to be embedded in Lucite or other like polymer to be provide as souvenir awards to deserving individual employees of aerospace contractors. These facts were known and were verifiable by NASA and the United States of America and the individual defendants.

d. *Joann Davis tries to sell her souvenirs*.

18. In and around the spring of 2011, JoAnn Davis sought to sell or otherwise find a buyer for the Apollo 11 heat shield and moon rock paperweights given to her husband for his service. She did so mainly because she was living on a fixed income, and was having trouble making ends meet, and moreover she sought to care for her ailing adult son. This was known to NASA and the United States of America and the individual defendants.

e. *<u>The United States and NASA have made private sale of space souvenirs hard</u>*.

19. After several failed attempts to find buyers and/or auction houses who would accept the souvenirs, Davis discovered that the auction houses believed that NASA and the United States of America had made it nearly impossible for private persons to acquire, sell, or possess Apollo-program moon rocks. The reasons for this interference were murky. The United States of America has made, through various media outlets, vague claims that Apollo moonrocks are "national treasures" that cannot be sold, or cannot be sold legally, or cannot be lawfully possessed by individuals. Notwithstanding their knowledge to the contrary, and contrary practice, NASA spokespersons and personnel have stated to media outlets that *no* lunar sample, not even chips (as was in the paperweights at issue here), have *ever* been given to individuals. These acts have been ongoing for at least a decade and continue to date. These facts (including NASA's dissemination of false statements) were known by NASA and the United States of America and the individual defendants.

20. Furthermore, contrary to NASA and its agents' and its personnel's statements, no law forbids the private ownership of Apollo moon rocks lawfully acquired. Nor is there a law that states that a "national treasure" can not be possessed or sold.

21. Nevertheless, the United States of America and NASA repeatedly stated that the permanent possession of *any* Apollo lunar sample by an individual no matter when and how acquired is a criminal act. They do so without the benefit of fact or law.

22. By providing this false information about the state of the law and the propriety of legal ownership of moon rocks (or chips therefrom), and denying that NASA authorized and practiced giveaways of lunar material as described

above, NASA and the United States of America knowingly injure property and the possessory rights of individuals.

23. NASA and the United States of America intentionally releases and disseminates this misinformation through its personnel to individuals and the media with the aim of ruining the market value of such items, clouding the title or provenance of such objects, or silencing persons who may have moon rocks from coming forward. Davis is informed and believes that NASA and its personnel, including the individual defendants, have continued to knowingly disseminate this false information through media outlets. The fact that this misinformation is intentionally disseminated for public consumption is known by the NASA and the United States of America and the individual defendants.

e. *Joann Davis is innocent of any belief that she was doing wrong*.

24. During her attempts to find a buyer for the heat shield or moon rock paperweights, Davis was *not* told that it violated criminal law, or was in any way illegal, to own, possess, or attempt to sell (or buy) such paperweights. Neither was she told that she did not have title and possessory rights to the paperweights at issue. Thus, Davis did not believe or suspect that it violated criminal law to own, possess, or attempt to sell (or buy) such paperweights. Nor did she believe or suspect that she did not have title and possessory rights to the paperweights at issue. Further, she did not tell anyone it was illegal to own those items. Rather she knew, and divulged to the defendants in this matter, that the paperweights containing the heat shield and the moon rocks had come into her possession legitimately, as described above, and thus were not stolen. NASA and the the United States of America and the individual defendants, by and through their "confidential" informant/agent did not inform her that it was a crime to own or attempt to sell such items.

f. *There was no probable cause to believe that Joann Davis was doing wrong*.

25. No facts that rose to the level of probable cause existed to suggest that Davis had committed any crime, let alone theft or receipt of stolen United States property (a.k.a. the paperweights at issue). No facts that rose to the level of probable cause existed to suggest that Davis knew, believed, or suspected that her husband had committed any crime, let alone theft or receipt of stolen of United States property (a.k.a. the paperweights at issue). This was known to NASA and the United States of America and Norman Conley, Thomas Reynolds, Mike Harrison, and NASA-employee Lofgren, and Does 1through 10.

26. In addition, neither NASA nor the United States of America nor Norman Conley, Thomas Reynolds, Mike Harrison, nor NASA-employee Lofgren, nor Does 1through 10 had information that rises to the level of probable cause that the Apollo 11 heat shield or moon rock paperweight that Davis possessed was stolen or otherwise obtained through theft or any other criminal act.

g. *Joann Davis contacts NASA*.

27. Nevertheless, having no luck finding a buyer in the private sector, Davis contacted NASA in the hope that it might be able to aid her in the sale of the paperweights and other memorabilia her family had collected over the years. She was informed by NASA that a representative of NASA might aid her. On May 10, 2011, Davis wrote that representative, Ms. Renee Allen, an email stating:

"... Ms Allen, My name is Joann DAVIS and I live in California. I've been searching the internet for months attempting to find someone that could help me find a buyer for 2 rare Apollo 11 space artifacts. 1. An Apollo 11 Moon Rock and 2. A piece of the Apollo

11 Heat Shield. Both of these items were given to my husband by Neil Armstrong. My husband was very instrumental in all of the space programs right up until his death in February of 1986. He died one week after the Challenger Tragedy. If you have any thoughts as to how I can proceed with the sale of these two items, please call or email me. Joann L. DAVIS - [redacted] ... email address: [redacted] Any help or information would be greatly appreciated ... Thank you"

h. *NASA takes action against Davis*.

28. This email was provided to the defendants before the wrongful actions in this matter. That is, Davis is informed (as acknowledged in the affidavit to a search warrant written by defendant Conley) that Renee Allen forwarded this information, including the Davis email [cited above] to Kennedy Space Center Protective Security Officer Robert Schmidt and Resident Agent-in-Charge Patricia Searle of the NASA-OIG, Kennedy Space Center Office. They are employees of the United States of America, and were acting in the course and scope of their employment.

29. Davis is informed (as acknowledged in the affidavit to a search warrant written by agent Conley) that Norman D. Conley began or participated in an investigation of Joann Davis. He is a Special Agent and Criminal Investigator for the National Aeronautics and Space Administration, Office of the Inspector General (NASA-OIG), assigned at relevant times at the Kennedy Space Center. His is an employee of the United States of America, and at all times was acting in the course and scope of his employment.

30. Davis is informed (as acknowledged in the affidavit to a search warrant written by agent Conley) that Conley had reason to believe that the paperweight Davis sought to sell was indeed a real Apollo 11 moon rock artifact.

That is, he *neither* believed *nor* suspected that Davis was engaged in attempting to sell a counterfeit. He has stated that he came to this conclusion because he recognized Davis' reference to a "heat shield" *(souvenir paperweight)* which he thought lent legitimacy to the email because he knew that heat shields *(souvenir paperweights)* did in fact exist and were distributed to key individuals.

31. Davis is informed (as acknowledged in the affidavit to a search warrant authored by agent Conley) that Conley said he used a non-law enforcement source to contact Davis in California by phone, Doe 1. On or about May 10, 2011, this alleged CI did contact Davis by phone. Unknown to Davis, these calls were recorded except, allegedly, for the first call. The calls were alleged to have originated from Florida.

32. During these conversations, Davis recounted how she came to possess the heat shield and moon rock paperweights as well as other facts as stated above. See also the attached affidavit for search warrant (ED11-0168M). That information was provided to Conley before he sought a search warrant.

i. *NASA employees obtain a fraudulent search warrant*.

33. On or about May 19, 2012 Defendants sought and obtained a search warrant to seize:

> " a. The purported Apollo 11 lunar material offered for sale by DAVIS as shown on the right side of Exhibit 1 attached to this affidavit; *[Davis Moon rock]*
>
> b. Any documents, records, and photographs showing how DAVIS came to possess the purported lunar rock and/or showing her knowledge about the purported lunar rock."

34. In that affidavit, Conley stated that they were investigating the crime of possession of stolen property. To support that statement, and allege probable cause for the search of Davis' person and seizure of the moon rock paperweight,

Conley quoted Gary Lofgren, a NASA employee, acting in the course and scope of his employment, who had informed him that it was against NASA policy to permanently release lunar samples to any individual. The affidavit went on to identify that policy as NASA Policy Directive 1387.2f.

35. Both Lofgren and Conley knew, but neither divulged to the magistrate, that NASA policy in question came into being three decades after Joann Davis' family had acquired the moon rock paperweight. Lofgren and Conley knew but did not inform the court that no law criminalized the practice of merely owning a moon rock (a moon rock not obtained by actual theft), nor did they instruct the court that NASA policies do not extend to the general public. Rather, Conley's statement in his affidavit suggests the opposite. He called moon rocks "'natural resources' and thus, the property of the US Government.'"

36. Based on this deceptive and false information as well as material omissions, as described above and below, Federal Magistrate Judge Sheri Pym signed a search warrant to search Davis's person and immediate personal possessions for the "Apollo 11 lunar material..." and "Any documents, records and photographs showing how DAVIS came to possess the purported lunar rock and/or showing her knowledge about the purported lunar rock." This search warrant was thus procured by fraud and knowing omission of material information and for the improper purpose of obtaining/seizing the moonrock paperweight and documentation.

37. In part, that affidavit (ED11-0168M) misstates or wrongly characterizes conversations with Ms. Davis. The affidavit suggests that Ms. Davis knew it was illegal to posses the moon rock she had or that she knew the moon rock had been stolen. Both inferences are false. And while Davis understood that it was difficult to sell moon rocks and proving what amounts to provenance, authenticity and ownership of the moon rocks, she never admitted or

implied that what she had was illegal to possess. The affidavit suggests otherwise.

j. *Plaintiffs are molested, detained, and arrested.*

38. Joann Davis was seized, arrested and/or forcibly detained by Norman Conley, Thomas Reynolds, Mike Harrison and numerous Riverside County Sheriff Deputies on May 19, 2011, and at such time property – a paper weight with Apollo 11 moon rock flakes – that was said to be valued at 1.7 million dollars was forcibly taken from her by these persons. They either personally grabbed Davis, the paper weight she held, or aided and supported such efforts. Paul Herman Cilley (DOB: 11/27/40) was also present with his wife at the time, and he was forcibly detained and threatened. Cilley also watched his wife, Joann Davis, being subjected to wrongful conduct as described herein as well as being subjected to wrongful conduct himself.

39. These acts occurred at the Denny's on Grape Street, Lake Elsinore, in Riverside County at approximately 12:30 pm on May 19, 2011.

k. *Defendats' conduct was unreasonable.*

40. In this case there were no facts that would lead a reasonable officer or deputy or other government employee to believe that the paperweight containing moon rock chips from the Apollo space program was in fact stolen. The paperweight was given to Davis's husband with the authorization of NASA and its officials as a memento and award for his service to the United States as part of a team for North American Rockwell. Mr. Davis and plaintiff Davis were married at the time that the souvenirs were awarded. Mr. Davis has subsequently passed. At the time of the instant event, as well as at the time a search warrant for the object was written and presented, it was known to the government employees involved in this matter, as well as NASA officials and investigators, that such moon rock chips incorporated in paperweight-like merit awards were

routinely awarded to private persons during and shortly after the Apollo program with the permission and authorization of NASA and its Supervisors and managers within NASA. (Obviously these items were not stolen, and no one claimed that they were at the time of their disbursement) .

41. The United States did not return that moon rock paperweight and have not offered to return it.

**Count I**

**Violation of the Fourth Amendment to the U.S. Constitution**

**Federal Tort Claims Act (28 U.S.C. § 1346(b).)**

42. Plaintiffs allege and incorporate the allegations of all prior paragraphs as if fully set forth herein.

43. This is an action to redress the deprivation of Plaintiffs' rights to be free from physical abuse and excessive force, a right secured to them by the Fourth Amendment to the United States Constitution. Ms. Davis was badly bruised and her tailbone was injured. Cilley was roughly handled, threatened, and manhandled.

44. The actions United States of America's employees, as set forth above, acting in the course and scope of their employment, were a violation of Plaintiffs' rights secured under the United States Constitution and of the laws of the State of California.

45. The acts of these employees were intentional and not privileged.

46. The plaintiffs were harmed by these actions.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment against The United States of America for compensatory damages, interest, and costs of this action.

**Count II**

**Violation of the Fourth & Fifth Amendments to the U.S. Constitution**

**Federal Tort Claims Act (28 U.S.C. § 1346(b).)**

47. Plaintiffs allege and incorporate the allegations of all prior paragraphs as if fully set forth herein.

48. This is an action to redress the deprivation of Plaintiff Davis's and Cilley's rights to be free from wrongful search. This right is secured to them by the Fourth and Fifth Amendments to the United States.

49. The employees of the United States of America, as described above, acting in the course and scope of their employment, searched the plaintiffs' persons, residence, and vehicle; in conducting the search, these employees acted intentionally. The search was unreasonable and not privileged.

50. As a direct and proximate result of the wrongful search of Plaintiffs, Plaintiffs suffered damages in the past and will continue to suffer damages.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment against The United States of America for compensatory damages, interest, and costs of this action.

**Count III**

**Violation of the Fourth & Fifth Amendments to the U.S. Constitution**

**Federal Tort Claims Act (28 U.S.C. § 1346(b).)**

51. Plaintiffs Davis alleges and incorporates the allegations of all prior paragraphs as if fully set forth herein.

52. This is an action to redress the deprivation of Plaintiff Davis's right to be free from wrongful taking. This right is secured to her by the Fourth and Fifth Amendments to the United States.

53. The employees of the United States of America, as described above, acting within the Course and scope of their employment, seized Mrs. Davis's

property; in seizing the plaintiff's property, these employees acted intentionally. The seizure was unreasonable and unprivileged.

54. As a direct and proximate result of the wrongful taking of Plaintiff's property, Plaintiff suffered damages in the past and will continue to suffer damages.

WHEREFORE, Plaintiffs Davis demands judgment against The United States of America for compensatory damages, interest, and costs of this action.

**Count IV**

**Violation of the Fourth & Fifth Amendment to the U.S. Constitution**

**Federal Tort Claims Act (28 U.S.C. § 1346(b).)**

55. Plaintiff Davis and Cilley allege and incorporate the allegations of all prior paragraphs as if fully set forth herein.

56. This is an action to redress the deprivation of Plaintiffs' right to be free from wrongful detention and arrest. This right is secured to them by the Fourth and Fifth Amendments to the United States.

57. The employees of the United States of America, as described above, acing in the course and scope of their employment, wrongfully and without sufficient cause detained and arrested Plaintiffs, and the detention and arrest was unduly prolonged and excessive in nature; in wrongfully detaining and arresting Plaintiffs, and detaining and arresting them excessively and for an unduly prolonged amount of time, these employees violated the constitutional rights of Plaintiffs.

58. These employees of The United States of America acted intentionally. The the detentions and arrests were unreasonable.

59. As a direct and proximate result of the Plaintiffs' detentions and arrests, Plaintiffs suffered damages in the past and will continue to suffer damages.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment against The United States of America for compensatory damages, interest, costs of this action and attorney's fees as provided in 42 USC § 1988.

**Count V**

**Federal Common Law: conversion**

**Federal Tort Claims Act (28 U.S.C. § 1346(b).)**

60. Plaintiff Joann Davis alleges and incorporates the allegations of all prior paragraphs as if fully set forth herein.

61. Joann Davis had lawful possession and ownership of the moon rock and the Apollo heat-shield fragments, taken by the United States of America and its employees, in the course and scope of their employment, as described above.

62. The United States of America and its employees wrongfully seized and retained said moon rocks and heat-shield fragments.

63. As a direct and proximate result of this seizure and retention of lawfully owned and possessed property, Joanne Davis has been harmed in the amount of 1.7 million dollars.

WHEREFORE, Plaintiff Davis demands judgment against the United States of America in the amount of 1.7 million dollars, plus costs of suit.

**Count VI**

**Federal Common Law: defamation on title**

**Federal Tort Claims Act (28 U.S.C. § 1346(b).)**

64. Plaintiff Joann Davis alleges and incorporates the allegations of all prior paragraphs as if fully set forth herein.

65. Employees of the United States of America and NASA, acting in the course and scope of their employment, communicated to media outlets and authors and , through them, to the wider American public, that moon rocks could

not be lawfully sold, bought, or possessed by private citizens.

66. This claim has showed up in various internet outlets, as well as mainstream media publications. Representative samples of this claim appear in the *Book Sex on the Moon: The Amazing Story Behind the Most Audacious Heist in History*, by Ben Mezrich (Doubleday 2011); *Finding lost moon rocks is his mission*, Molly Hennessy-Fiske (Los Angeles Times (online) February 07, 2012); *Astronauts, Cronkite to get moon rock plaques*, James Oberg (NBCNews.com, July 16, 2004) *Cronkite on space: inspiration, not information*, James Oberg (http://www.thespacereview.com/article/570/1; March 6, 2006).

67. No law prohibits possession or sale or purchase of moon rocks.

68. This publication played a material and substantial part in inducing others not to negotiate with Joann Davis over the moon rock, nor buy it.

69. As a consequence, Joann Davis has been damaged in the amount of 1.7 million dollars.

WHEREFORE, Plaintiff Davis demands judgment against the United States of America in the amount of 1.7 million dollars, plus costs of suit.

**Count VII**

**Federal Common Law: battery**

**Federal Tort Claims Act (28 U.S.C. § 1346(b).)**

70. Plaintiffs Davis and Cilley allege and incorporate the allegations of all prior paragraphs as if fully set forth herein.

71. Employees of the United States of America and NASA, acting within the course and scope of their employment, wrongfully and without privilege offensively touched the plaintiffs.

72. As a consequence, plaintiffs Davis and Cilley have been harmed.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment of compensatory damages against the United States of America, plus costs of suit.

**Count VIII**

**Petition for Return of Property**

**(Federal Rules of Criminal Procedure 41(g))**

73. Plaintiff Davis alleges and incorporates the allegations of all prior paragraphs as if fully set forth herein.

74. The search and seizure that resulted in the taking of Joann Davis's moon rock and heat-shield fragment was unlawful, and she was wrongfully deprived of her property.

WHEREFORE, Joann Davis demands return of her property from the United States of America.

**Count IX**

**Violation of the Fourth Amendment to the U.S. Constitution**
**(*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotic*)**

75. Plaintiffs Davis and Cilley allege and incorporate the allegations of all prior paragraphs as if fully set forth herein.

76. This is an action to redress the deprivation of Plaintiffs' rights to be free from physical abuse and excessive force, a right secured to them by the Fourth Amendment to the United States Constitution.

77. The actions Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 were a violation of Plaintiffs' rights secured under the United States Constitution and of the laws of the State of California. These actions are the wrongful detention and arrest of the persons of the plaintiffs. Joann Davis was badly bruised and her tailbone was injured. Cilley was manhandled and threatened. The actions of the defendants was unreasonable.

78. Norman Conley, Thomas Reynolds, Mike Harrison, Robert

Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 were intentional.

79. The plaintiffs have no statutory remedy against these Defendants Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment against Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 for compensatory damages, punitive damages, interest, and costs of this action, as well as a jury trial.

**Count X**

**Violation of the Fourth & Fifth Amendments to the U.S. Constitution**

**(*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotic*)**

80. Plaintiffs allege and incorporate the allegations of all prior paragraphs as if fully set forth herein.

81. This is an action to redress the deprivation of Plaintiff Davis's and Cilley's rights to be free from wrongful search and seizure. This right is secured to them by the Fourth and Fifth Amendments to the United States.

82. Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 searched the plaintiffs' persons, residence, and vehicle; in conducting the search, Defendants acted intentionally; and the search was unreasonable.

83. As a direct and proximate result of the wrongful acts of Plaintiffs, Plaintiffs suffered damages in the past and will continue to suffer damages.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment against Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 for compensatory damages, punitive damages, interest, and costs of this action, as well as a jury trial.

**Count XI**

**Violation of the Fourth & Fifth Amendments to the U.S. Constitution**

***(Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotic)***

84. Plaintiff Davis alleges and incorporates the allegations of all prior paragraphs as if fully set forth herein.

85. This is an action to redress the deprivation of Plaintiff Davis's right to be free from wrongful taking. This right is secured to her by the Fourth and Fifth Amendments to the United States.

86. Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 , and DOES 1through 10 seized the plaintiff's property; in seizing the plaintiff's property, Defendants Norman Conley, Thomas Reynolds, Mike Harrison, and DOES 1through 10 acted intentionally; and the seizure was unreasonable.

87. As a direct and proximate result of the wrongful taking of Plaintiff's property, Plaintiff suffered damages in the past and will continue to suffer damages.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment against Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 for compensatory damages, punitive damages, interest, and costs of this action, as well as a jury trial

**Count XII**

**Violation of the Fourth & Fifth Amendment to the U.S. Constitution**

***(Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotic)***

88. Plaintiff Davis and Cilley allege and incorporate the allegations of all prior paragraphs as if fully set forth herein.

89. This is an action to redress the deprivation of Plaintiffs' right to be free from wrongful detention and arrest. This right is secured to them by the

Fourth and Fifth Amendments to the United States.

90. Defendants Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 and DOES 1through 10 wrongfully and without sufficient cause detained and arrested Plaintiffs, and the detention and arrest was unduly prolonged and excessive in nature; in wrongfully detaining and arresting Plaintiffs, and detaining and arresting them excessively and for an unduly prolonged amount of time.

91. Defendants Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 acted intentionally; and the detentions and arrests were unreasonable.

92. As a direct and proximate result of the Plaintiffs' detentions and arrests, Plaintiffs suffered damages in the past and will continue to suffer damages.

WHEREFORE, Plaintiffs Davis and Cilley demand judgment against Defendants Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 for compensatory damages, punitive damages, interest, costs of this action and attorney's fees as provided in 42 USC § 1988.

**PRAYER**

WHEREFORE, the Plaintiffs pray that his Court enter a judgment against the United States of America and grant the following relief:

a. (Counts I-II, IV, VII): Compensatory damages, in an amount of no less than $50,000.00;

b. (Counts III,V-VI): Compensatory damages, in an amount of no less than $1,700,000;

c. (Count VIII) Order the return of the moon rock souvenirs seized

from Joann Davis;

d. Costs of suit;

e. Award such other and further relief that this court deems proper.

WHEREFORE, the Plaintiffs pray that his Court enter a judgment against jointly and severally against defendants Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, and Gary Lofgren, and Does 1through 10 and grant the following relief:

a. (Counts IX-X, XII): Compensatory damages, in an amount of no less than $50,000.00;

b. (Count XI): Compensatory damages in the amount of 1.7 million dollars;

c. (Counts IX-XII): Punitive damages, in an amount of no less than $50,000 from each individual defendant;

d. Costs of suit;

e. Award such other and further relief that this court deems proper.

Date: March 14, 2013

SCHLUETER & SCHLUETER

By: ______________________

Attorneys for Plaintiffs
Jon R. Schlueter/Peter Schlueter

## JURY DEMAND

Plaintiff hereby demands jury trial as provided by Rule 38(a) of the Federal Rules of Civil Proc. on the *Bivens* claims.

Date: March 7, 2012

SCHLUETER & SCHLUETER

By: [signature]

Attorneys for Plaintiffs
Jon R Schlueter/Peter Schlueter

# Federal Tort Claim

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

1. Submit to Appropriate Federal Agency:

NASA

2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.

Joann Davis, 15271 Alavarado, Lake Elsinore, 92530

Peter Schlueter, Schlueter & Schlueter
108 Orange St #8, Redlands CA 92373

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | 06/04/1937 | married | 05/19/2011 | 12:00pm |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

[Synopsis only] The injuries & damages suffered by Joann Davis began on May 10, 201 when she contacted NASA, and led to her being forcibly detained by NASA OIS agents in the City of lake Elsinore, CA on May 19. During that det/arrest a paperweight containing moonrock chips was forcibly seized. It has not been returned. NASA OIS agents used criminal process knowing that such process was inappropriate since they lacked sufficient information that her possession of the moonrock paperweight came within the elements of a criminal violation. See attached for additional facts and assertions. [See attached pages]

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

[synopsis only] One Lucite paperweight with moonrock chips (seized on May 19, 2011 and possessed by NASA) see attached

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Ms Davis suffered injury to his arms and back. A more complete description is contained in the medical records that are attached.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| see attached | |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 1,700,000 | 17,000,000 | | 18,700,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] | 909 381-4888 | 5-18-12 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? [X] Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. [ ] No

N/a this is not an accident. Health insurance, medicare and United Health Care,

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? [X] Yes [ ] No

United Health insurance, medicare.

17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

n/a

19. Do you carry public liability and property damage insurance? [ ] Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). [ ] No

n/a

INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

***(d)*** **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED OMB NO. 1105-0008

1. Submit to Appropriate Federal Agency:

NASA

2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.

Paul Herman Cilley, 15271 Alavarado, Lake Elsinore, 92530

Peter Schlueter, Schlueter & Schlueter
108 Orange St #8, Redlands CA 92373

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | | married | 05/19/2011 | 12:00pm |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

[Synopsis only] Cilley was forceably detained by persons unknown from NASA and the Riverside Sheriff's Department and watched his wife as she was detained, arrested, asualted by officers, and as described in attached pages.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

see attached

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Attached

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| see attached | |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 850,000.00 | 1,700,000 | | 2,550,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] | 909 381-4888 | 5-16-12 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? [X] Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. [ ] No

N/a

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? [X] Yes [ ] No

17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

n/a

19. Do you carry public liability and property damage insurance? [ ] Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). [ ] No

n/a

INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.
B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

4

Power of Attorney

UNIFORM STATUTORY FORM POWER OF ATTORNEY

(California Probate Code Section 4401)

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465). THE POWERS LISTED IN THIS DOCUMENT DO NOT INCLUDE ALL POWERS THAT ARE AVAILABLE UNDER THE PROBATE CODE. ADDITIONAL POWERS AVAILABLE UNDER THE PROBATE CODE MAY BE ADDED BY SPECIFICALLY LISTING THEM UNDER THE SPECIAL INSTRUCTIONS SECTION OF THIS DOCUMENT. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I JOANN L. DAVIS 15271 Alvarado St Lake Elsinore CA 92530
(your name and address)

appoint PETER SCHLUETER / JON SCHLUETER (Attys)
(name and address of the person appointed, or of each person appointed if you want to designate more than one).

as my agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

INITIAL

__ (A) Real property transactions.

__ (B) Tangible personal property transactions.

__ (C) Stock and bond transactions.

__ (D) Commodity and option transactions.

__ (E) Banking and other financial institution transactions.

__ (F) Business operating transactions.

__ (G) Insurance and annuity transactions.

__ (H) Estate, trust, and other beneficiary transactions.

JLD X (I) Claims and litigation.

__ (J) Personal and family maintenance.

JLD

__ (K) Benefits from social security, medicare, medicaid, or other governmental programs, or civil or military service.

__ (L) Retirement plan transactions.

__ (M) Tax matters.

__ (N) ALL OF THE POWERS LISTED ABOVE.

YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

This power of attorney will continue to be effective even though I become incapacitated.

STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.

EXERCISE OF POWER OF ATTORNEY WHERE MORE THAN ONE AGENT DESIGNATED

If I have designated more than one agent, the agents are to act Separately or as a law firm.

IF YOU APPOINTED MORE THAN ONE AGENT AND YOU WANT EACH AGENT TO BE ABLE TO ACT ALONE WITHOUT THE OTHER AGENT JOINING, WRITE THE WORD "SEPARATELY" IN THE BLANK SPACE ABOVE. IF YOU DO NOT INSERT ANY WORD IN THE BLANK SPACE, OR IF YOU INSERT THE WORD "JOINTLY", THEN ALL OF YOUR AGENTS MUST ACT OR SIGN TOGETHER.

I agree that any third party who receives a copy of this document may act under it. A third party may seek identification. Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this 3rd day of April, 2012

Joann L Davis
(your signature)

State of California
County of San Bernardino

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

[Include certificate of acknowledgment of notary public in compliance with Section 1189 of the Civil Code or other applicable law.]

State of California
County of San Bernardino
On 04-3-2012 before me, Carol L. Carl-Notary Public
personally appeared Joann L. Davis
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct
WITNESS my hand and official seal.
Carol L. Carl
Signature of Notary

(Seal)

CAROL L. CARL
Commission # 1884345
Notary Public - California
San Bernardino County
My Comm. Expires Apr 24, 2014

8



06.23.2010 00:11

Photograph of
Apollo 11 heatshield paperweight
and moonrock chip paperweight.

# JOANN DAVIS / PAUL CILLEY
# CLAIM for Damages and Relief

**Situs of Claim: unknown**

**POTENTIAL DEFENDANTS**

NASA / US Government
Norman D. Conley
Gary Lofgren (Lunar receiving lab administrator)
Protective Security Officer Robert Schmidt
Resident Agent-in-Charge Patricia Searle of the NASA-OIG, Kennedy Space Center Office.
Unknown NASA OIS supervisor (who approved and supervised action)
Unknown NASA OIS administrator (who approved and supervised action)
Unknown NASA OIS agent 1
Unknown NASA OIS agent 2
Unknown NASA OIS agent 3
Unknown NASA OIS agent 4

**FACTUAL INTRODUCTION**

Joann Davis was, at the time of this incident (May 19, 2011), a 4' 11", 74-year-old retiree. She had retired from North American Rockwell in 1992. She has not been employed by any aerospace contractor or any government agency since that time. Her husband Robert Davis had also been an employee at North American Rockwell until his death on February 5, 1986. These facts were known and were verifiable by the defendants in this matter.

Robert Davis was a engineer who had worked on various space programs, including the Apollo missions, for North American Rockwell. At no time did he or Joann Davis work directly for NASA. That is, they were not NASA employees. Neither had access to the NASA Lunar Receiving Lab where moon rocks and lunar samples were kept. These facts were known and were verifiable by the defendants in this matter.

In the early 70s, Robert Davis received two awards, both fashioned as paper weights, that were meant to recognize his contributions in the Apollo 11 moon landing program. One of these Lucite (or like plastic/polymer) paper weights contained a small portion of the Apollo 11 heat shield, the other was said to have contained small fragments (the size of pieces of rice) of lunar material (a.k.a.

moonrocks) brought back by the Apollo 11 mission. (Attached photos) Plaintiff is informed and believes that NASA and its administrators authorized the practice of giving out these awards and that this practice was widespread. These moonrocks given out were *not* part of the "Goodwill" moonrocks provided by the United States to other nations and our various states. These facts were known and were verifiable by the defendants in this matter.

Plaintiff is informed and believes that in the late 60s or early 70s, NASA approved the practice that allowed small chips of moon rocks and/or pieces of space craft heatshield to be embedded in Lucite or other like polymer to be provide as souvenir awards to deserving individual employees of aerospace contractors. These facts were known and were verifiable by the defendants in this matter.

The Lucite (or like polymer) encased heatshield and moonrocks were community property as they were acquired during the course of Robert and Joann Davis' legal marriage and stayed with the estate/community when Robert Davis passed.

In and around the spring of 2011, JoAnn Davis sought to sell or otherwise find a buyer for the Apollo 11 heatshield and moonrock paperweights given to her husband for his service. She did so mainly because she was living on a fixed income, was having trouble making ends meet, and moreover sought to care for her ailing adult son. **This was known to the defendants in this matter.**

After several failed attempts to find buyers and/or auction houses who would accept the souvenirs, she discovered that the auction houses believed that NASA and the federal government had made it nearly impossible for private persons to acquire, sell or possess Apollo program moonrocks. The reasons for this interference were murky. The U.S. government has made, through various media outlets, vague claims that Apollo moonrocks are "national treasures" that cannot be sold, or cannot be sold legally, or cannot be lawfully possessed by individuals. Not withstanding their knowledge to the contrary, and contrary practice, NASA spokespersons and personnel have stated to media outlets that *no* lunar sample, not even chips (as was in the paperweights at issue here), have *ever* been given to individuals. These acts have been ongoing for at least a decade and continue to date. These facts (including NASA's dissemination of false statements) were known by the defendants in this matter.

Furthermore, contrary to NASA and its agents and personnel's statements, no law forbids the private ownership of Apollo moonrocks lawfully acquired . Nor is there a law that states that a "national treasure" can not be possessed or sold.

Nevertheless, the US government and NASA repeatedly state that the permanent possession of *any* Apollo lunar sample by an individual no matter when and how acquired is a criminal act. They do so without the benefit of fact or law.

By providing this false information about the state of the law and the propriety of legal ownership of moonrocks (or chips therefrom), and denying that NASA authorized and practiced giveaways of lunar material as described above, NASA knowingly injures property and the possessory rights of individuals.

NASA intentionally releases and disseminates this misinformation through its personnel to individuals, and the media with the aim of ruining the market value of such items, clouding the title or provenance of such objects, or silencing persons who may have moonrocks from coming forward. Davis is informed and believes that NASA and its personnel, including the defendants, have continued to disseminate this false information through media outlets. The fact that this misinformation is intentionally disseminated for public consumption is known by the defendants in this matter.

During her attempts to find a buyer for the heatshield or moonrock paperweights, Davis was *not* told that it violated criminal law, or was in anyway illegal, to own, possess or attempt to sell (or buy) such paperweights. Neither was she told that she did not have title and possessory rights to the paperweights at issue. Thus, Davis did not believe or suspect, that it violated criminal law to own, possess or attempt to sell (or buy) such paperweights,, nor did she believe or suspect that she did not have title and possessory rights to the paperweights at issue. Further, she did not tell anyone it was illegal to own those items. Rather she knew, and divulged to the defendants in this matter, that the paperweights containing the heatshield and the moonrocks had come into her possession legitimately, as described above, and thus were not stolen. The defendants in this matter, by and through their "confidential" informant/agent did not inform her that it was a crime to own or attempt to sell such items.

No facts that rose to the level of probable cause existed to suggest that Davis had committed any crime, let alone theft or receipt of stolen US property (a.k.a. the

paperweights at issue). No facts that rose to the level of probable cause existed to suggest that Davis knew, believed, or suspected, that her husband had committed any crime, let alone theft or receipt of stolen of U.S. property (a.k.a. the paperweights at issue). This was known to the defendants in this matter.

In addition, no defendant in this matter had or has information that rises to the level of probable cause that the Apollo 11 heatshield or moonrock paperweight that Davis possessed was stolen or otherwise obtained through theft or any other criminal act.

Nevertheless, having no luck finding a buyer in the private sector, Davis contacted NASA in the hope that it might be able to aid her in the sale of the paperweights and other memorabilia her family had collected over the years. She was informed by NASA that a representative of NASA might aid her. On May 10, 2011, Davis wrote that representative, Ms. Renee Allen, an email stating:

> "... Ms Allen, My name is Joann DAVIS and I live in California. I've been searching the internet for months attempting to find someone that could help me find a buyer for 2 rare Apollo 11 space artifacts. 1. An Apollo 11 Moon Rock and 2. A piece of the Apollo 11 Heat Shield. Both of these items were given to my husband by Neil Armstrong. My husband was very instrumental in all of the space programs right up until his death in February of 1986. He died one week after the Challenger Tragedy. If you have any thoughts as to how I can proceed with the sale of these two items, please call or email me. Joann L. DAVIS - Ph: 951 674.1320 ... email address: DAVISjlc@verizon.net Any help or information would be greatly appreciated ... Thank you"

This email was provided to the defendants before their wrongful actions in this matter. That is, Davis is informed (as acknowledged in the affidavit to a search warrant authored by defendant Conley) that Renee Allen forwarded this information, including the Davis email [cited above] to Kennedy Space Center Protective Security Officer Robert Schmidt and Resident Agent-in-Charge Patricia Searle of the NASA-OIG, Kennedy Space Center Office.

Davis is informed (as acknowledged in the affidavit to a search warrant authored by defendant Conley) that Norman D. Conley, a Special Agent and Criminal

Investigator for the National Aeronautics and Space Administration, Office of the Inspector General (NASA-OIG), assigned at the time at the Kennedy Space Center, began or participated in an investigation of Joann Davis.

Davis is informed (as acknowledged in the affidavit to a search warrant authored by defendant Conley) that Conley had reason to believe that the paperweight Davis sought to sell was indeed a real Apollo 11 moonrock artifact. That is, he *neither* believed or suspected that Davis was engaged in attempting to sell a counterfeit. He has stated that he came to this conclusion because he recognized Davis' reference to a "heat shield" *(souvenir paperweight)* which he thought lent legitimacy to the email because he knew that heatshields *(souvenir paperweights)* did in fact exist and were distributed to key individuals.

Davis is informed (as acknowledged in the affidavit to a search warrant authored by defendant Conley) that Conley said he used a non-law enforcement source [UNKNOWN NASA OIS AGENT 1] to contact Davis in California by phone. On or about May 10, 2011, this alleged CI did contact Davis by phone. Unknown to Davis, these calls were recorded except, allegedly, for the first call. The calls were alleged to have originated from Florida.

During these conversations, Davis recounted how she came to possess the heatshield and moonrock paperweights as well as other facts as stated above. See also, the attached affidavit for search warrant (ED11-0168M). That information was provided to Conley before he sought a search warrant.

On or about May 19, 2012 Conley sought and obtained a search warrant to seize:

> " **a. The purported Apollo 11 lunar material offered for sale by DAVIS as shown on the right side of Exhibit 1 attached to this affidavit;** ***[Davis Moon rock]***
> **b. Any documents, records, and photographs showing how DAVIS came to possess the purported lunar rock and/or showing her knowledge about the purported lunar rock."**

In that affidavit, Conley stated that they were investigating the crime of possession of stolen property. To support that statement, and allege probable cause for the

14

search of Davis' person and seizure of the moonrock paperweight, Conley quoted Gary Lofgren, a NASA employee, who had informed him that it was against NASA policy to permanently release lunar samples to any individual. The affidavit went on to identify that policy as NASA Policy Directive 1387.2f.

Both Lofgren nor Conley knew, but neither divulged to the magistrate, that NASA policy in question came into three decades after Joann Davis' family had acquired the moonrock paperweight. Lofgren and Conley knew but did not so inform the court that no law criminalized the practice of merely owning a moonrock (a moonrock not obtained by actual theft), nor did instruct the court that NASA policies do not extend to the general public. Rather, Conley's statement in his affidavit suggests the opposite. He called moonrocks "'natural resources' and thus, the property of the US Government.'"

Based on this deceptive and false information as well as material omissions, as described above and below, Federal Magistrate Judge Sheri Pym, signed a search warrant to search Davis' person for the "Apollo 11 lunar material..." and "Any documents, records and photographs showing how DAVIS came to possess the purported lunar rock and/or showing her knowledge about the purported lunar rock." This search warrant was thus procured by fraud and knowing omission of material information and for the improper purpose of obtaining/seizing the moonrock paperweight and documentation.

In part, that affidavit (ED11-0168M) misstates or wrongly characterizes conversations with Ms. Davis. The affidavit suggests that Ms. Davis knew it was illegal to posses the moonrock she had or that she knew the moon rock had been stolen. Both inferences are false, and while Davis understood that it was difficult to sell moonrocks and proving what amounts to provenance, authenticity and ownership of the moonrocks, she never admitted or inferred that what she had was illegal to possess. The affidavit suggests otherwise.

On or about May 19, 2011, possibly "UNKNOWN NASA OIS AGENT 1" called Davis and told her to meet him at a Denny's Restaurant in the City of Lake Elsinore. He had negotiated to pay Davis $1.7 million for the moonrock paperweight.

Davis arrived at Denny's with her second husband Paul Herman Cilley. Upon sitting down at the Denny's Restaurant booth, "UNKNOWN NASA OIS AGENT

1 or UNKNOWN NASA OIS AGENT 2" asked to look at the moonrock paperweight. Davis removed it from her purse and wrapping and was in the process of handing it to him when it was forcibly taken from her and she was pulled from the booth. None of the individuals identified themselves as law enforcement officers. She was harmed physically during this seizure and search. Davis was treated for her physical injuries at Inland Valley Medical Center (records attached).

Davis, and Cilley were then removed from the restaurant and taken outside. UNKNOWN NASA OIS AGENT 1 or 2 detained and interrogated Davis continuously for over two hours. Davis asked repeatedly to be free from custody. That request was denied.

Members of the Riverside Sheriff Department aided in the seizure, and her removal from Denny's and the detention at the request of NASA AGENTS and the defendants. It is believed that NASA and its agents did not admit the full infirmity of their acts to these deputies. Also present, and taking part in the acts at Denny's herein described were Unknown NASA OIS AGENT 2, 3 and 4. The trauma and fear created by the public detention and arrest caused her to urinate on herself. This further humiliated her.

Davis and her husband were held for hours. Law enforcement officers and NASA personnel searched her purse and car. While she was in custody, law enforcement officers and NASA personnel demanded that they be allowed to search her home. Davis and Cilley consented under duress. The home was searched. No evidence of criminal conduct or contraband was found.

NASA, Conley and Lofgren, seized the moonrock paperweight belonging to Davis, and have exercised dominion and control over it and have not returned it to her. In addition, before and after seizing the moonrock paperweight, NASA and the US Government, have wrongfully failed to provide due process to Ms. Davis. This includes the failure of NASA to institute asset forfeiture procedure and/or proceedings post seizure; and wrongfully utilizing criminal search and seizure process when it was inapplicable rather than allow Davis to contest the government's right to seize the property pre-seizure. Thus, NASA wrongfully eschewed applicable due process to take Davis' property. Such violations continue to date.

Davis and Cilley allege wrongful and/or false imprisonment and false arrest; and that to attempt to justify such false imprisonment and false arrest, an invalid search warrant was requested and issued that contained deliberate falsehoods and material omissions.

The conduct of NASA agents, Conley and Lofgren's, caused Davis and Cilley harm both in body, and physical pain and discomfort, and in mind, by causing humiliation, fear and anguish over the very public arrest, or in the case of Cilley, detention. The couple have also been held up to critical public examination after the detention and arrest was publicized by NASA and the defendants. In addition, said AGENTS and persons deliberately abused process by utilizing a criminal procedure (search warrant) to affect what amounted to a civil matter (the seizure and the determination of the disposition of property).

The conduct engaged in by CONLEY and LOFGREN and UNKNOWN AGENTS 1 and 2 was so egregious to represent IISED and NISED. Their conduct interfered, or aided in the interference, with claimants possessory rights of the moonrock chip paperweight which was lawfully owned by Davis.

Such conduct also violated Davis and Cilley's civil rights to hold property without fear that government would take it without due process of law and to engage in lawful commerce, and to be free from unreasonable search and seizure as well as excessive force.

The ongoing conduct by NASA and the defendants that sought to disseminate false information about the ownership or moonrocks, whether they were "national treasures" and therefore illegal to own, wrongfully sought to ruin the provenance and value of the moonrock paperweights and moonrock gifts. This affected Davis and others so situated.

Finally, both Davis and Cilley were disturbed, shocked and severely distressed by the conduct of NASA and the defendants as described herein towards their spouse as they personally witnessed. This includes, but is not limited to, the actual physical search and seizure as described herein, as well as the accusations of criminality made against Davis, made directly by the defendants and indirectly through media outlets, as well as holding the couple up to public ridicule.

**Supervisory liability**
Unknown NASA OIS supervisor (who approved and supervised action) Unknown NASA OIS administrator (who approved and supervised action) are liable to Davis and Cilley because they allowed, or authorized, or even participated in the acts as referenced herein to occur; and/or knowingly concealed material facts, that would have ended this investigation and allegation of criminal conduct by Davis, or at least ultimately stopped the harm caused to both Davis and Cilley.

**DEMAND AND COMPENSATION AND RELIEF SOUGHT**

**Joann Davis**
Ms. Davis seeks compensation because of the wrongful acts by NASA/ US Government, CONLEY, LOFGREN, UNKNOWN NASA OIS AGENTs 1-4, Protective Security Officer Robert Schmidt, Resident Agent-in-Charge Patricia Searle of the NASA-OIG, Kennedy Space Center Office; Unknown NASA OIS supervisor (who approved and supervised action); Unknown NASA OIS administrator (who approved and supervised action) who she alleges violated her 4th and 5th Amendment Constitutional rights by wrongfully seizing her property (Moonrock paperweight), seizing her, including using excessive force, excessively detaining and/or arresting her, and then continuing this violation by wrongfully searching her home and personal property, as well as seeking to interfere with or devalue her property rights in the moonrock paperweight. This, in part, is commonly called a BIVENS action, as well as an action for conversion, replevin, and injunctive relief, as well other causes of action reasonably inferred by the facts above. INJURIES: As a direct results of the wrongful acts of the above named individuals Davis claims that she was injured in her personal dignity, emotional well being, finances, and physical well being. Part of the money she expected to receive from the sale of the objects was to care for her son who was both medical and mentally infirmed. The loss of this care and the security that these funds would have provided contributed to his death in 2012. His loss weighs heavily on Davis. In addition, the acts of these individuals and NASA have harmed her ability to openly possess and sell her lawfully acquired property and has held her up to public ridicule and embarrassment.

**Amount of compensation sought:** This claim is for an amount of 10 times the promised purchase amount for the moonrock Lucite paperweight that NASA coveted above Ms. Davis' constitutional rights, $17,000,000 plus the value of the

moonrock itself if it is not returned ($1.7 million). (Total 18,700,000.) This includes the value for emotional distress, loss of consortium, as well as special damages by way of medical costs equaling:

**Return of her property to Joann Davis:** One paperweight containing moonrock chips as acquired by Apollo 11 astronauts.

**Injunctive or other relief:** Cease and desist from the disinformation and correct through all appropriate means that disinformation, including providing true information to media outlets about the private ownership of Apollo 11 moonrocks. This should include divulging the history of how those moonrock awards were given away, and where possible, identify to whom such items were given. NASA should not seek to interfere with the provenance of this or other moonrocks that have been given out through the auspices of NASA personnel, and aid in proving the provenance where possible.

**Paul Cilley**

Mr. Cilley was injured and seeks compensation because of the wrongful acts by NASA/ US Government, CONLEY, LOFGREN, UNKNOWN NASA OIS AGENTs 1-4, Protective Security Officer Robert Schmidt, Resident Agent-in-Charge Patricia Searle of the NASA-OIG, Kennedy Space Center Office; Unknown NASA OIS supervisor (who approved and supervised action); Unknown NASA OIS administrator (who approved and supervised action), who violated his 4th and 5th Amendment Constitutional rights by wrongfully seizing him, including by using excessive force and impermissible threat of force, and then continuing this violation by wrongfully searching his home and personal property. This, in part, is commonly called a BIVENS action. INJURIES: As a direct results of the wrongful acts of the above named individuals Mr. Cilley claims that he was injured in his personal dignity, emotional well being, was held to ridicule and embarrassment

**Amount of compensation sought:** This claim is for an amount of $1,000,000 for Mr. Cilley.

# CLAIM for Damages and Relief

More...

**ACCOMPANYING DOCUMENTATION**

Search warrant, affidavit and return: ED-11-0168M, US of America v Joann L Davis. DOB XX-XX-1937, Riverside County, CA, affiant Norman Conley, Signed Hon Sheri Pym May 19, 2011.

Medical records, Joann Davis.

Photographs of moonrock and heatshield paperweight.

Date: 5-18-12 ______________________

Signed for the claimants by Peter B Schlueter, Attorney

Documents attached:
Standard Form 95 Joann Davis
Standard Form 95 Paul Cilley
Power of Attorney
Photograph of Objects at issue
Search Warrant
Medical records/billing Joann Davis

Search Warrant

AO93 (Rev.8/82)

SEARCH WARRANT ON WRITTEN AFFIDAVIT

COPY

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
| --- | --- |
| UNITED STATES OF AMERICA<br>v.<br><br>THE PERSON KNOWN AS:<br><br>**JOANN L. DAVIS, DOB XX-XX-1937**<br>**RIVERSIDE COUNTY, CA** | DOCKET NO. MAGISTRATE'S CASE NO.<br>ED 11-0168M<br><br>**TO: ANY SPECIAL AGENT WITH NATIONAL AERONAUTICS AND SPACE ADMINISTRATION OR ANY OTHER AUTHORIZED OFFICER** |

**Affidavit(s) having been made before me by the below-named affiant that he/she has reason to believe that on the items known as:**

SEE ATTACHMENT A

**in the Central District of California**

**there is now being concealed certain property, namely:**

SEE ATTACHMENT B

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s).

YOU ARE HEREBY COMMANDED to search on or before Fourteen (14) days (not to exceed 14 days) the person or place named above for the property specified, serving this warrant and making the search (in the daytime--6:00 A.M. to 10:00 P.M.) and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to the duty U.S. Magistrate Judge as required by law.

| NAME OF AFFIANT | SIGNATURE U.S. MAGISTRATE JUDGE | DATE/TIME ISSUED |
| --- | --- | --- |
| NORMAN CONLEY (NASA-OIG) | HON. SHERI PYM | MAY 19 , 2011 |

*If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure Rule 41(e), show reasonable cause therefore.
**United States Judge or Judge of a State Court of Record.

COREY LEE:ii

DOCKETED ON CM
MAY 25 2011
BY 044

22 H

AFFIDAVIT

I, Norman D. Conley, being duly sworn, depose and state as follows:

1. I am currently employed as a Special Agent/Criminal Investigator for the National Aeronautics and Space Administration ("NASA"), Office of Inspector General ("OIG"), Kennedy Space Center ("KSC"), Florida. I have been a Special Agent with the NASA OIG for approximately 1 year and 3 months. I have been a law enforcement officer since August 1994. Previously, I worked for the U.S. Department of State, Diplomatic Security Service, the Orange County Sheriff's Office in Florida and the Titusville Police Department in Florida.

2. I have attended training classes accredited by the Florida Department of Law Enforcement and the Florida Criminal Justice Standards and Training Commission. I graduated from the University of Central Florida with a Bachelors Degree in Criminal Justice in 2002. I have completed the 12-week Federal Basic Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. In 2010, I completed the four week Inspector General Academy training program in Glynco, Georgia. I have also completed specialized training by attending classes sponsored by the Federal Law Enforcement Center, including Product Substitution Investigators

Training Program and Procurement Fraud Investigators Training Program.

3. As a Special Agent ("SA") with the NASA-OIG, I have conducted several white collar fraud investigations including product substitution, false claims made to the government, and theft of government property. I have also received extensive and specialized training in the investigation of fraud and financial crimes including embezzlement, kickbacks, and money laundering.

4. This affidavit is submitted in support of a warrant to search JOANN L. DAVIS's ("DAVIS") person and the personal effects carried on or about DAVIS, for evidence, fruits, and instrumentalities concerning violations of Title 18, United States Code, Section 641. I intend to execute the search during a meeting with DAVIS on May 19, 2011 in Riverside County, California.

5. This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of, or investigation into this matter. The statements set forth in this affidavit are based upon my personal participation in this investigation; training, education, and experience as a SA with the NASA-OIG; conversations with other law enforcement officers and agents who are knowledgeable about the case; and

consultation with other reliable sources of information relative to this investigation.

PERSON TO BE SEARCHED

6. The person to be searched is JOANNE L. DAVIS ("DAVIS"), the individual who has been negotiating the sale of the purported Apollo 11 lunar material. The person includes any personal effects such as a purse or a bag that she may be carrying on-her. DAVIS is described as a white female, born on XX-XX-1937, with social security number XXX-XX-1157.

ITEMS TO BE SEIZED

7. The items to be seized from JOANNE L. DAVIS and her personal effects are as follows:

a. The purported Apollo 11 lunar material offered for sale by DAVIS as shown on the right side of Exhibit 1 attached to this affidavit;

b. Any documents, records, and photographs showing how DAVIS came to possess the purported lunar rock and/or showing her knowledge about the purported lunar rock..

PROBABLE CAUSE

8. On May 10, 2011, Resident Agent-in-Charge Patricia Searle ("Agent Searle") of the NASA-OIG, KSC Resident Office received information from KSC Protective Security Officer Robert Schmidt ("Officer Schmidt") that an individual may be in possession of an Apollo Lunar Rock. Specifically, Officer

Schmidt received information from Space Gateway Support ("SGS") contract investigator Renee Allen ("Investigator Allen") that DAVIS emailed Investigator Allen and wrote the following in the email:

> "... Ms Allen, My name is Joann DAVIS and I live in California. I've been searching the internet for months attempting to find someone that could help me find a buyer for 2 rare Apollo 11 space artifacts. 1. An Apollo 11 Moon Rock and 2. A piece of the Apollo 11 Heat Shield. Both of these items were given to my husband by Neil Armstrong. My husband was very instrumental in all of the space programs right up until his death in February of 1986. He died one week after the Challenger Tragedy. If you have any thoughts as to how I can proceed with the sale of these two items, please call or email me.
>
> Joann L. DAVIS - Ph: 951 674.1320 ... email address: DAVISjlc@verizon.net
>
> Any help or information would be greatly appreciated ... Thank you"

9.    Based on my training and experience, the "Apollo 11" description of the moon rock indicates that if the item is indeed a moon or lunar rock, it belongs to the U.S. government. Specifically, "Apollo 11" indicates that the rock was obtained during a space mission during the Apollo program when Neil Armstrong was one of the astronauts. In addition, the reference to a "heat shield" lends legitimacy to the email because heat shields did exist and were distributed to key individuals as souvenirs (and were not to be sold). A heat shield is a material used on the bottom portion of a space craft to protect

the capsule from extreme heat during reentry into the earth's atmosphere.

10. For further investigation, NASA-OIG employed the use of a confidential source ("CS") to contact DAVIS. The CS is a well-documented, reliable, and dependable source who has conducted numerous successful operations with NASA-OIG. The CS has one 1987 California conviction for a misdemeanor solicitation of a prostitute in which s/he served two days in jail.

11. Between May 10, 2011 and May 13, 2011, under the NASA-OIG direction, the CS exchanged several phone calls with DAVIS in which they discussed the Apollo 11 lunar rock. The CS played the role of a broker for a buyer who was interested in the lunar rock. These conversations occurred while the CS was located in Florida and DAVIS was located in California. The first call was not monitored or recorded as I was waiting for approval for consensual monitoring. The rest of the calls were consensually-monitored and recorded after approval was received. The calls were placed from KSC and Cape Canaveral, Florida to DAVIS's phone number at 951-674-1320 as indicated in DAVIS's email. The calls are summarized as follows:

a. On May 10, 2011, the CS called DAVIS and a woman claiming to be DAVIS answered the phone. After this phone call, the CS relayed to me the substance of the conversation. The following is a summary of that conversation:

i. DAVIS is in possession of several items, but only two of the items are of real value; one is an Apollo 11 "heat shield" and the other is a moon rock given to her husband by Neil Armstrong. DAVIS claimed that Richard Branson (President and CEO of Virgin Atlantic) had contacted her "through his people" to make an offer on the rock. DAVIS does not want a "Fed" knocking on her door and will not give "it" back to NASA; she had been informed by Paul Wass (unknown individual) that there are problems with selling Apollo 11 items at auctions and that it has to be "outside that."

ii. DAVIS stated that she was willing to sell the item for "big money underground." DAVIS explained that her husband was "big" in the space program, but that he had passed away. DAVIS is now on a fixed income and indicated that she was having financial issues due to her daughter's death and her son's health condition.

iii. At the conclusion of the call, the CS asked DAVIS to send photos of the items she wanted to sell. That evening, the CS received an email from DAVIS containing several

photographs. One of the photos dated "06.23.2010" depicted two circular items on a black cloth with a part of a human hand next to the items, apparently to demonstrate relative size. One item had an eagle and the other was yellowish in color, somewhat translucent, with a small grey or black object centered inside of it. A color copy of the photograph is attached to this affidavit as "Exhibit 1." There were also several other photographs depicting space memorabilia, letters from KSC from DAVIS to her children, and service pins. The service pins appeared to memorialize the different length of service at the North American Rockwell, a NASA contractor during the Apollo program.

b. On May 11, 2011, at approximately 3:44 p.m. (eastern), the CS called DAVIS at 951-674-1320. A woman answering to the name of "Joann" answered the phone. The following is a summary of the conversation:

i. The CS confirmed with DAVIS that the spec inside the item on the right side of the photograph (Exhibit 1) is the Apollo lunar rock. She also confirmed that the black circular material embedded inside the item on the left is a piece of a heat shield. DAVIS explained that she does not keep the items in the house, but in a safe deposit box.

ii. DAVIS stated that she understands the lunar rock cannot be sold through normal processes and that "big

brother" is out there. Apparently, DAVIS had attempted to engage two individuals she did not identify to sell the items for her. However, the two individuals turned her down because it is "not sellable." When she told them that she does not have a "black market" contact, according to DAVIS, the individuals replied, "that is why it is a touchy subject." DAVIS also appeared to express some concern that the items would be taken from her by the government; she stated that one of her children advised that "they" could come knocking at her door and demand that she prove that the items were gifts.

iii. The CS then asked DAVIS the price of the lunar rock and DAVIS replied, "a lot." She added that she is waiting for Richard Branson to call her back, but that it appeared he was not getting his messages from his broker. DAVIS also talked about researching prices of artifacts in Europe and in the United States. Then, DAVIS again talked about why she wanted to sell the lunar rock. She mentioned her financial and health problems and not wanting to struggle in her golden years.

iv. When the CS offered DAVIS $80,000.00 for the lunar rock, DAVIS immediately rejected the offer and stated, "I am actually insulted that, that is the offer for it. It wouldn't be worth my while to work the deal." She then told the CS to go back to his/her buyer for a much higher price and that she will not take anything less than $1.5 to $1.7 million.

DAVIS then added that she may not be able to commit to even $1.5 million because of her concern that she may be liable for a quarter or half-a-million dollars in taxes.

v. During the conversation, the CS periodically informed DAVIS that he would need to personally view the lunar rock for verification prior to firming up the transaction. The CS and DAVIS agreed that the week of May 16th was a possibility for a meeting in California.

c. On May 11, 2011, at approximately 4:53 p.m. (eastern), the CS called DAVIS at 951-674-1320. The following is a summary of the conversation:

i. DAVIS told the CS that she needed another day to think about the deal, that she had received another phone call about the lunar rock, and that she needed to talk to her "tax man." The CS asked whether there is a bidding war and that if there was, s/he would like DAVIS to at least extend the courtesy of allowing him/her and his/her buyer to make the last counteroffer. DAVIS assured the CS that she is not trying to create a bidding war, but that people were making offers. She then assured the CS that she is just trying to be honest with the CS, which is why she called him/her immediately, and stated, "If I commit . . . if I do commit, I am an honest person. Then everything else won't be recognized, and I know that."

31

ii. DAVIS then expressed concern over the payment method and stated, "naturally, I'm not gonna take a check or anything like that." She explained that she was concerned about how to "deal with the situation" because she wanted to "protect myself with this" and "doing things legally" because "I'm just not an illegal person . . . ." The CS responded that s/he and DAVIS are both "legal," but intimated that these types of transactions cannot be advertised in newspapers and that she must know that this is a questionable transaction because she used the term "black market." DAVIS then continued to discuss her concern with the payment method and making sure that the payment is "legal tender." DAVIS and the CS concluded by further discussing the payment method and potentially doing a wire transfer if DAVIS so desires. DAVIS and the CS then agreed to speak with each other the next day about the deal.

d. On May 12, 2011, the CS called DAVIS at 951-674-1320. The following is a summary of conversation:

i. DAVIS began by stating that she was not having a good day because she discovered that it was not going to be easy to conduct the transaction. She explained that she was unable to find a place where a wire transfer could clear immediately, as she was concerned that "you would be gone with the product." She told the CS that she was "in a pickle," to

32

which the CS replied that DAVIS could hold the product until the wire transfer clears.

ii. DAVIS then suggested meeting on a Thursday during the week of May 16th. She stated that after speaking with a financial advisor, she was concerned that she would lose a large sum of money in taxes. DAVIS also stated that she was discussing with her financial advisor whether to have the money wired to Arizona where she has another residence. DAVIS then asked the CS to ask his/her buyer to pay enough so that she would make a net profit of approximately $1.7 million after taxes. DAVIS and the CS then agreed to speak the day before their meeting date on May 19th.

12. Shortly after DAVIS emailed the photographs to the CS on May 10, 2011, I provided the photograph in Exhibit 1 to Dr. Gary Lofgren, the lunar curator at Johnson Space Center in Texas. Dr. Lofgren is NASA's senior lunar expert and has been with NASA since August 12, 1968 through the Apollo program. As a lunar curator, one of his responsibilities is to secure and control all lunar material per NASA policies and procedures. He is also NASA's expert in identifying lunar material. The following is a summary of the information I learned from and about Dr. Lofgren:

a. According to Dr. Lofgren, the spec in the item on the right of the photograph is consistent with the color of

lunar material, although he could not confirm that it is lunar material without testing in his laboratory. In addition, although he was not familiar with the particular yellowish-round object containing the spec, it is possible that such material was used to contain lunar material; however, Dr. Lofgren stated that he would have to view the material in person to make any assessment.

b. In the past, on a number of occasions, Dr. Lofgren was asked to identify lunar materials from photographs. On those occasions, unlike this one, he was able to definitively determine that the items in the photographs were *not* lunar material.

c. In addition, based on my conversation with Dr. Lofgren and other NASA personnel and my reviews of NASA policies and regulations, Dr. Lofgren and his department has exclusive control over the receipt and distribution of lunar material obtained from Apollo missions. According to Dr. Lofgren, it is against NASA policy to permanently release lunar samples to individuals (as opposed to nations or entities as gifts) and NASA has never given lunar materials or samples to any one individual, including astronauts.

13. On Wednesday, May 18, 2011, the CS called DAVIS at 951-674-1320. The phone call was consensually-monitored. During this conversation, DAVIS agreed to meet the CS at a

public location in the Riverside County, California, to allow the CS to examine the Apollo 11 lunar rock.

OWNERSHIP OF LUNAR MATERIAL

14. Based on the Space Act of 1958 and its interpretation via federal regulations and NASA policies, it is clear that lunar material is a "national resource," and thus, the property of the U.S. government. (National Aeronautics and Space Act of 1958, 42 U.S.C. § 2473; NASA Policy Directive 1387.2F).

15. During a 2002 case investigated by NASA OIG involving lunar material, Astronaut Neil Armstrong was interviewed. In that interview, Mr. Armstrong stated that it has always been common knowledge to NASA employees who work in the Manned Spacecraft Center that any moon rocks or dust collected by astronauts would be government property and that no one, including the astronauts, would have the right or authority to keep a sample for his or herself or give it away. Mr. Armstrong specifically stated that he has never given or sold moon rocks, dust, or Apollo 11 equipment to anyone.

CONCLUSION

16. Based on the facts set forth above, my training, education and experience as a NASA-OIG SA, consultation with other experienced law enforcement officers and agents, and consultation with other reliable sources of information relative to this investigation, I submit there is probable cause to

believe that JOANN L. DAVIS is in possession of contraband, evidence of the crime, fruits, and instrumentalities of the crime concerning a violation of Title 18, United States Code, Section 641, possession of stolen government property.

_______________________________
Norman D. Conley
Special Agent, NASA-OIG

Sworn and subscribed to before me
On this _____ day of May 2011.

_______________________________
THE HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE

35

ATTACHMENT A

PERSON TO BE SEARCHED

The person to be searched is JOANN L. DAVIS, the individual who has been negotiating the sale of the purported Apollo 11 lunar material belonging to the United States government. The person includes any personal effects such as a purse or a bag that she may be carrying on her. DAVIS is described as a white female, born on XX-XX-1937, with social security number XXX-XX-1157.

ATTACHMENT B

ITEMS TO BE SEIZED

The items to be seized from JOANNE L. DAVIS and her personal effects are as follows:

a. The purported Apollo 11 lunar material offered for sale by DAVIS as shown on the right side of Exhibit 1 attached to this affidavit;

b. Any documents, records, and photographs showing how DAVIS came to possess the purported lunar rock and/or showing her knowledge about the purported lunar rock.



06 23 2010 00 11

#03

**RETURN**

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
| --- | --- | --- |
| May 19, 2011 | May 19, 2011 1230 | Joann L. Davis |

INVENTORY MADE IN THE PRESENCE OF SA Tom Reynolds

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

1 yellowish in color item with small grey or black small spec matching photo Exhibit 1

**CERTIFICATION**

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

U.S. JUDGE OR MAGISTRATE DATE

# Medical Records and billing

St. Joseph Hospital
Children's Hospital of Orange County
1100 West Stewart Drive
Orange, CA 92868
714-771-8233

TAKE HOME INSTRUCTIONS FOR PATIENT

DAVIS, JOANN L
DOB: 06/04/1937
Age/Sex: 73/F

RA7012537134
HN01351067
REG ER

Service date/time: 05/25/11 1221
Depart date/time:
Depart Disposition: HOM
Physician: LA ROCCA, BRAD M MD

I hereby acknowledge receipt of the instructions indicated above. I understand that I have had emergency treatment and that I may be released before all my medical problems are known or treated. I will arrange for followup care as instructed above.

The list of medications has been reviewed and reconciled. You are instructed to contact the prescribing physician for any questions related to resuming home medications at discharge. In addition, any medication that has been prescribed as a result of your visit has been noted as well.

I give authorization for the Emergency Department to furnish medical record information to my physician.

CHILD RESTRAINT - California Law Requires All Infants/Children UNDER 6 Years/60 Pounds Be Secured In A Passenger Restraint System When In A Motor Vehicle. In Addition, California Law Requires All Children OVER 6 Years/60 Pounds Be Secured In A Properly Fitted Seat Belt. If You Need Additional Information, Please Contact CHOC Child Passenger Safety Program, 714-289-4085 (English) or 714-289-4091 (Spanish).

Patient Signature: [signature] Date: 5/25/11

I have explained the instructions and have given a copy to the patient.

Discharge Personnel Signature: [signature] Date: 5/25/11

Fax (Cur... Page 1 of 1

5/1/2012 10:11 AM Bactes ... 19093819288 8

© 1996 - 2003 T-System, Inc. Circle or check affirmatives, backslash (\) negatives.

20

Children's Hospital

## EMERGENCY PHYSICIAN RECORD

Alleged Assault

TIME SEEN: 1235 ROOM: 22 EMS Arrival

HISTORIAN: pt family paramedics translator

HX / EXAM LIMITED BY:

### HPI

chief complaint: injury to: Tail Bone

onset / duration: just prior to arrival, today, yesterday, 6 min / hrs / days ago

where: home, school, neighbor's, park, work / Occurred, street, Dennys

context: fists, kicked, choked, bitten, pushed / thrown, pushed / thrown against wall, reported spousal abuse, struck with object(s)

pushed by Police Officer ... Law Enforcement

severity of pain: mild, moderate, severe, (1/10)

associated symptoms: lost consciousness, dazed, seizure, weakness / numbness, duration, remembers injury, coming to hospital

location of pain / injuries: Buttock

head, face, mouth, neck, chest, abdomen, back, upper, mid, lower, radiating to R / L thigh / leg

right: shidr, arm, elbow, f-arm, wrist, hand, hip, thigh, knee, leg, ankle, foot

left: shidr, arm, elbow, f-arm, wrist, hand, hip, thigh, knee, leg, ankle, foot

### ROS

recent illness, fever / chills, weakness, numbness, neck pain, back pain: lower, shortness of breath, LNMP, preg, post-menop

problems urinating, nausea / vomiting, leg / ankle swelling, problems with vision, nasal drainage, rash, anxiety / depression, all systems neg except as marked

Nurse's / MS comments were reviewed

### PAST HX

diabetes Type 1 Type 2 — diet / oral / insulin

hepatitis / HIV

Hypertension

use of alternative therapy / medicines

old records ordered / summary

Tetanus immun. UTD / given in ED

Meds: none / see nurses note, aspirin, coumadin, clopidogrel — Lipitor

Allergies: NKDA / see nurses note ... drugs

### SOCIAL HX

smoker, quit smoking, Date:

smoking cessation 5-10 min. discussed with patient

smoking pkt/yr given

alcohol (recent / heavy / occasional), drugs

occupation

Primary language: English / Spanish / Other

### FAMILY HX

negative, ... DM

7010 (1.04)

---

Nurse's Assessment Reviewed, Vitals Reviewed

VS BP ... HR ... RR ... Temp ... Pulse Ox ... on RA, Interp: nml / low, Time ...

### PHYSICAL EXAM

General Appearance

no acute distress, alert

c-collar / backboard (PTA / in ED)

mild / moderate / severe distress

anxious / lethargic / unconscious

HEAD

no evidence of trauma

see diagram

raccoon eyes / Battle's sign

NECK

non-tender, painless ROM, trachea midline

see diagram

decreased / limited ROM

pain on movement of neck

Nexus criteria neg

midline tenderness / distracting injury

altered mental status / recent ETOH

focal neuro deficit

EYES

PERRL, EOM

unequal pupils R ... mm L ... mm

EOM entrapment / palsy

subconjunctival hemorrhage

ENT

nml ext. inspection

no dental / oral inj.

airway nml

moist mucous membranes

produces tears / hydrated

hemotympanum

TM obscured by wax

clotted nasal blood

dental injury / malocclusion

RESP / CVS

chest non-tender

no ecchymosis

breath sounds nml

no resp. distress

heart sounds nml

see diagram

rib tenderness / palpable fracture

crepitus / subcutaneous emphysema

splinting / paradoxical movements

decreased breath sounds

wheezes / rales / rhonchi

tachycardia / bradycardia

ABDOMEN

non-tender

no distention

see diagram

tenderness / guarding / rebound

mass

GENITAL / RECTAL

nml ext. inspection

nml rectal tone

heme-negative stool

perineal hematoma

blood at urethral meatus

decreased rectal tone

vaginal bleeding

NEURO / PSYCH

oriented x4

CN's nml as tested

sensation nml

motor nml

mood / affect nml

disoriented to person / place / time / others

facial asymmetry

unsteady / ataxic gait

sensory / motor deficit

slurred speech

depressed mood / affect

MR01351667 05/25/2011

A872123337134 SJD

Davis, Joann L

F 75 DOB06/04/1937

La Rocca, Brad (ER)

https://www1.s... accessline.com/tw2/teleweb?uif...=print&...=xuinfnnnlfxlxomx 5/1/2012 1/2

5/1/2012 10:11 AM

20 Alleged Assault

SKIN
✓ intact
✓ warm, dry
✓ nml color
_ see diagram
_ ecchymosis / laceration
_ crepitus / diaphoresis
_ decubitus

BACK
_ no CVA tenderness
✓ no vertebral tenderness
✓ see diagram
_ vertebral point / CVA tenderness
_ muscle spasm / limited ROM

EXTREMITIES
✓ atraumatic
✓ pelvis stable
✓ hips non-tender
✓ no pedal edema
✓ nml ROM
_ see diagram
_ bony point tenderness
_ painful / unable to bear weight
_ pulse deficit
Joint Exam:
_ limited ROM / ligaments laxity
_ joint effusion

T=Tenderness, FB=Foreign Body ... S=Swelling, E=Ecchymosis, B=Burn, C=Contusion, L=Laceration, A=Abrasion, M=Muscle Spasm, P=Puncture Wound

PROCEDURES

Wound Description / Repair: Time
length ___ cm location
linear stellate irregular flap intact subcut / muscle
clean contaminated moderately / heavy
distal NVT: neurovascular intact no tendon injury
anesthesia: local topical lidocaine / bupivacaine epi / bicarb
digital block
prep: Hibiclens / Shur-Clens / Betadine
irrigated with saline
wound explored
to base / in bloodless field
no foreign body identified
foreign material removed
debrided / non-viable
wound margins revised
multiple flaps aligned
repair: Wound closed with: Wound adhesive / steri-strips
SKIN # ___ -0 nylon / prolene / staples
SUBCUT # ___ -0 vicryl / chromic
OTHER # ___ -0
Procedure done by: PA-C / MD

LABS

| CBC | Chemistries | UA | ETOH |
|---|---|---|---|
| nml except | nml except | normal except | TOX |
| WBC | Na | | |
| Hgb | K | | |
| Hct | Cl | | |
| Platelets | CO2 | HCG | PT/PTT |
| | BUN | serum / urine | INR |
| | Glu | POS NEG | |
| | Creat | | |
| | Ca | | |

2010-01/40

XRAYS
☐ Interp. by ER MD ☐ Reviewed by ER MD
☐ Disc'd w/ radiologist Dr.
C-spine T-spine LS-spine pelvis
nml / NAD no fracture nml alignment soft tissues nml

CXR ☐ Interp. by ER MD ☐ Reviewed by ER MD
☐ Disc'd w/ radiologist Dr.
NL no infiltrates NL heart NL mediastinum
other

CT Scan ☐ Disc'd w/ radiologist
head C-spine chest abdomen / pelvis
nml / NAD

Ultrasound / FAST Exam
nml / NAD

Other

PROGRESS Time unchanged improved re-examined

bones handled / clay
see Progress / Critical Care
consults with
referred / discussed with Dr. ___ Time
Counseled patient / family regarding: lab and rad results need for follow-up

PATHWAY
✓ given ☐ none
prescribed

CRIT CARE TIME: (excluding separately billable procedures) min

CLINICAL IMPRESSION
Abrasion
Contusion with LOC w/o LOC
Low Back
Laceration
Fracture
Sprain / Strain cervical thoracic lumbosacral

DISPOSITION ☑ home ☐ OPD ☐ transferred
☐ admitted AMA absconded / LWBS
CONDITION ☑ unchanged ☐ improved ☑ stable
Care transferred to Dr. Time
SCRIBE
RN / PA
MD / DO

I have reviewed the documentation by the scribe and confirm and agree with the documentation
☑ E&M completed by MD ☑ FTF ☐ Dictated Addendum ☑ Completed
☐ Additional: Chest Pain, CritCare, EKG, Ex/Red, ...
IV, LAC, LP, OBS, ...

MM01351067 05/25/2011
BR70123337134 SJO
Davis, Joann L.
F 73 DOB06/04/1937
La Rocca, Brad (ER)

5/1/2012 10:11 AM Bautes 19053819238 10

Saline Lock:
Cath size: Location: # attempts: Time/Initials: DC'd (time)
Cath size: Location: # attempts: Time/Initials: DC'd (time)

| Time | Medication or IV Solution or Treatment | Dose/amt | Route/Site | Pain Scale 0-10 Pre | Pain Scale 0-10 Post | Other Response | IV Rate | Medication/IV Solution End Time | Continues at time of admission | Infusion Pump | Initial |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |
| | | | | | | | | | | Yes No | |

**ACUTE TREATMENT**

| Location | Via (circle one) | Time Left/Returned | Initial |
|---|---|---|---|
| CT Scan | W/C Gurney Ambul | | |
| Nuclear Med | W/C Gurney Ambul | | |
| Radiology | W/C Gurney Ambul | | |
| Ultrasound | W/C Gurney Ambul | | |
| Monitor (see strip) | | | |
| EKG Done | | | |
| Portable X-Ray | | | |
| Foley/Straight Cath Size # | | | |
| Foley D/C'd | | | |
| Initial Foley Output ml color | | | |

**TREATMENT/DIAGNOSTICS/PROCEDURES**

| | Time | Initial |
|---|---|---|
| Bedside Glucose | | |
| Labs Drawn/Sent | | |
| Urine Collected/Sent | | |
| ABG's/VBG's | | |
| O2 L/min. Mask NC | | |
| Lumbar Puncture | | |
| NG Inserted Size | | |
| Pelvic Exam | | |
| Eye Irrigation c Morgan Lens | | |
| PHT | | |

**TREATMENT/ORTHO**

| | Time | Initial |
|---|---|---|
| Ice/Elevate | | |
| Wound Cleansed c/ | | |
| Sutured/Stapled | | |
| Ace Wrap Size | | |
| Sling | | |
| Splint/Cast | | |
| Crutch Training | | |
| Crutches Dispensed | | |
| CSM Present Distal to | | |
| Injury Post Splint/Cast | | |

☐ Seizure Precautions ☐ Moderate Sedation Protocol (See Moderate Sedation Flow Sheet) ☐ Latex Precautions in place
☐ Safety watch Initiated time Initials Discontinued time Initials
☐ Restraints protocol (see Restraint flowsheet) Initiated time Initials Discontinued time Initials

**VITAL SIGNS:**

| Time | Temp | Pulse | RR | BP | Pain | O2sat | O2 | Rhythm (if applicable) | Initial |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**NURSING NOTES**

Nursing Critical Care Time:
Start: End: Initials:
Start: End: Initials:

St. Joseph Hospital ST. JOSEPH HEALTH SYSTEM CHOC

PATIENT RECORD
NURSING TREATMENT CONTINUATION

EDF8

PATIENT ID

M001351057 05/25/2011
RA7012337134 SJO
Davis, Joann L
F 73 DOB06/04/1937
Unassigned

Fax (Ctrl+P to print) Page 1 of 1

5/1/2012 10:11 AM Baptee -> 18008819288 11

NURSING NOTES

| Date | Time | Lead | Activity / Event |
|---|---|---|---|
| | | | |

INTAKE ____ OUTPUT ____

☐ ED MD OK TO ADMIT: ____ MD Time ____ ☐ May be transported off cardiac monitor

Discharge/Admission/Transfer Assessment (circle one) Completed by: ____ RN Time ____

BREATHING: ☐ Normal ☐ Other ____ BREATH SOUNDS: ☐ Clear ☐ Other ____

CIRCULATION: ☐ Cap refill less than or equal to 2 sec. ☐ Other ____ HYDRATION: Mucous Membrane ☐ Moist - Other ____

FONTANELLE: ☐ Soft/Flat ☐ N/A ☐ Other ____

SKIN: ☐ Pink/Warm/Dry ☐ Other ____

LEVEL OF CONSCIOUSNESS: ☐ Alert ☐ Normal for patient ☐ Other ____
☐ Oriented ☐ Cooperative ☐ Sleeping ☐ Appropriate for age

SKIN/WOUND: ☐ No active bleeding ☐ Dressing clean, dry, intact ☐ N/A ORTHO: ☐ CSM distal to injury ☐ Other ____ ☐ N/A

Disposition Time: ____ Vital Signs: T: ____ P: ____ RR: ____ BP: ____ O₂Sat: ____ Pain (Scale 0-10): ____

ADMIT: ☐ CHART SCANNED ____ (initials)
Admit to: ____ Via: ☐ Gurney ☐ Wheelchair
Transported By: ☐ PCT ☐ PCT/RN ☐ O₂ ☐ Monitor
Report Faxed To: ____ @ ____

TRANSFERRED
To: ____
☐ Transfer Form Completed and sent with patient
Via: ☐ ACLS ☐ Other ____
Name of Ambulance Transporting ____
☐ Copy of chart and all diagnostic results given to transfer team

HOME: Discharge Instructions Given To: ____ ☐ Smoking Cessation
Preferred Method of Learning: ☐ Verbal ☐ Written
Educational Needs: ☐ No Barriers to Learning Identified ☐ Barriers to Learning ____
Regarding: ____
☐ Rx Instruction Given ____ (name of medications)
☐ List of home meds given to patient
Patient/Family able to validate discharge instruction by: ☐ Verbal Feedback ☐ Return Demonstration ____

REFERRALS: ☐ Immunizations ☐ PMD/Specialist ____ (Name) ☐ Abuse Report Filed
☐ Other ____

Discharged: ☐ Ambulatory ☐ Stroller/WC ☐ Carried ACC by: ____
Comments: ____
Discharge Print/Signature ____ RN

St. Joseph Hospital
ST. JOSEPH HEALTH SYSTEM
CHOC

PATIENT RECORD
NURSING TREATMENT CONTINUATION

7010-07/4 (3/27/09)

ED84

PATIENT ID
HM01351057 05/25/2011
RR70123337134 S30
Davis, Joann L
F 73 D0B06/04/1937
Unassigned,

4 of 6

45

Fax (Ctrl+P to print)

5/1/2012 10:11 AM Baotes -> 19093819288 12

☐ NPO

**PROCEDURES**
☐ Anoscopy
☐ Bladder Scan ____ mL residual
☐ Central Venous Line
☐ Doppler fetal heart rate
☐ Epistaxis
☐ Foley ☐ Initial urine output ____
☐ Leg bag
☐ Intubation
☐ Laceration repair
☐ Laryngoscopy
☐ Lumbar Puncture
☐ Monitor
☐ NG Tube ___ Fr ☐ Gravity
☐ Suction ☐ Amount ____
☐ Pelvic exam
☐ Postural BP and P
☐ Procedural Sedation
☐ Restraint Orders
☐ Slit Lamp ☐ Ophth Burr
☐ Visual Acuity

**CARDIOVASCULAR**
☐ EKG ☐ Rhythm Strip
☐ V-R ☐ V7-9
☐ Noninvasive Hemodynamic Profile
☐ Echocardiogram ☐ TEE
☐ Carotid Doppler
☐ DVT R L
☐ Track I ☐ Track II ☐ Track III

**ORTHO**
☐ Aluminum foam ☐ dorsal blocking finger ☐ POF intrinsic plus
☐ Neoprene ☐ Wrist ☐ Elbow ☐ Knee Ankle
☐ Plaster / OCL
volar wrist / dorsal wrist / sugar tong / thumb spica / radial gutter / ulnar gutter / FM splint / Long arm / neutral / long leg / short leg / supination / pronation
☐ Rib belt
☐ Shoulder immobilizer R L
☐ Velcro: wrist / thumb / finger / elbow / knee immobilizer
☐ Slings ☐ Sling R L
☐ Crutches

**RESPIRATORY**
☐ O2 Sats
☐ Respiratory Distress pathway
☐ Bronchiolitis pathway
☐ ABG ☐ RA
☐ O2 ___ L/min NC mask
☐ Non Rebreather ☐ Intubated

**SPECIAL RADIOLOGY**
☐ Contrast ☐ IV ☐ PO ☐ V/Q Scan
☐ CT: ☐ Head ☐ C Spine ☐ L Spine ☐ Chest ☐ Abdomen ☐ Pelvis
☐ Other
☐ Ultrasound: ☐ Aorta ☐ GB ☐ Abd ☐ Pelvic
☐ MRI: ☐ Head ☐ C Spine ☐ L Spine
☐ MRA: ☐ Head ☐ C Spine ☐ L Spine

Time: MD/PA
Time: MD/PA

☐ ORDERS NOTED SECRETARY
☐ ORDERS NOTED RN

**RADIOLOGY**
☐ Portable ☐ Chest ☐ Lat C-Spine
☐ C-Spine 3 View ☐ Obliques
☐ Thoracic Spine ☐ Lumbar Spine ☐ Sacrum
☐ Skull ☐ Face ☐ Orbit ☐ R ☐ L ☐ Nose
☐ AAS ☐ KUB ☐ Pelvis
☐ Clavicle R L ☐ Hip R L
☐ Shoulder R L ☐ Femur R L
☐ Humerus R L ☐ Knee R L
☐ Elbow R L ☐ Tib-Fib R L
☐ Forearm R L ☐ Ankle R L
☐ Wrist R L ☐ Heel R L
☐ Hand R L ☐ Foot R L
☐ Finger R L ☐ Toe R L
T 1 L R S C 2 3 4 5

**LABORATORY**
☐ Accucheck ☐ Urine Dip ☐ Bedside HCG
☐ CBC ☐ H/H ☐ Blood Culture x1 x2
☐ Manual Differential ☐ Peripheral ☐ Central
PANELS
☐ Electrolytes (Na, K, Cl, CO2)
☐ BMP (Na, K, Cl, CO2, BUN, Creatinine, Glucose, Calcium)
☐ CardED (Trop, Myo, CK, CKMB if CK elevated)
☐ Hepatic Panel (T/D Bili, Tpro, Alb, Alk Phos, ALT, AST)
☐ RUQ Panel (+bili, lipase, ALK Phos, AST)
☐ Aldolase ☐ Myoglobin ☐ LDH ☐ CK
☐ Amylase ☐ Lipase
☐ Ammonia ☐ Serum Ketones ☐ Lactate
☐ Bilirubin ☐ Total ☐ Direct
☐ BNP ☐ Noninvasive Hemodynamic Profile
☐ BUN ☐ Creatinine
☐ Ca ☐ Mg ☐ Phos ☐ Albumin
☐ CRP ☐ Quant ☐ ESR ☐ D-dimer
☐ Protime ☐ PTT
☐ Uric Acid
SERUM LEVELS
☐ Alcohol ☐ Acetaminophen ☐ Aspirin
☐ Digoxin ☐ Phenytoin ☐ Phenobarbital ☐ [illegible]
☐ Valproic acid ☐ ____ ☐ ____ ☐ Carbamazepine
☐ UA ☐ Cath ☐ Void ☐ Urine Culture
☐ Quant HCG ☐ Qual HCG
☐ Type/Rh ☐ Type/Screen
☐ Type and Cross ____ Units
CSF
☐ Gram stain ☐ C&S ☐ Glucose ☐ Protein
☐ Cell count ☐ Viral culture ☐ Herpes culture
☐ Herpes PCR ☐ ____ ☐ ____
☐ Anticardiolipin Ab ☐ Antithrombin III level
☐ Factor V Leiden ☐ Lupus anticoagulant
☐ Protein C level ☐ Protein S level
OTHER
☐ ____ ☐ ____ ☐ ____
☐ ____ ☐ ____ ☐ ____

**ADDITIONAL ORDERS**
☐ Call Dr:
☐ Call Dr:
☐ Additional orders on page 6
☐ Cons Critical
☐ ____ Pathway

St. Joseph Hospital
ST. JOSEPH HEALTH SYSTEM
CHOC

EMERGENCY DEPARTMENT PHYSICIANS
NOTES AND ORDERS

EDF5

PATIENT ID
MR01351067 05/25/2011
AR70123337134 SJO
Davis, Jozon L
F 73 DOB06/04/1937
Unassigned

☐ NPO Ht: ______ inches/cm Wt: ______ kg Allergies: ______

| Time | MEDICATIONS |
|---|---|
| | ☐ Acetaminophen / codeine (Tylenol #3) 1 2 Po |
| | ☐ Acetaminophen ____ mg 500 1000 mg Po |
| | ☐ Adenosine ____ mg 6 mg x 2 12 mg IV (0.1-0.2 mg/kg) |
| | ☐ Albuterol ____ mg/3mL NS by HHN x 1 2 3 continuous |
| | ☐ Ampicillin 500 mg 1 Gm IV |
| | ☐ Ancef (Cefazolin) ____ mg IM IV |
| | ☐ Aspirin ____ mg 81 162 325 mg Po |
| | ☐ Ativan (Lorazepam) ____ mg 1 2 mg Po IV |
| | ☐ Atrovent ____ 0.5 mg/3mL NS by HHN x 1 2 3 continuous |
| | ☐ Auralgan / Colace ____ gtts R L ear(s) |
| | ☐ Benadryl (Diphenhydramine) ____ mg Po IM IV (0.5-0.75 mg/kg) |
| | ☐ Cefepime (Maxipime) 50 mg/kg 500 mg 1 2 Gm IV |
| | ☐ Claforan (Cefotaxime) 50 mg/kg ____ mg IM IV |
| | ☐ Clindamycin ____ mg 300 600 900 mg IVPB |
| | ☐ Compazine (Prochlorperazine) ____ mg 2 5 10 mg IM IV |
| | ☐ Darvocet N-100 1 or 2 tab Po |
| | ☐ Decadron (Dexamethasone) ____ mg Po IM IV |
| | ☐ Digoxin 0.25 0.5 mg IV |
| | ☐ Dilaudid (Hydromorphone) ____ mg 1 2 mg IM IV |
| | ☐ Diltiazem (Cardizem) ____ mg IV bolus ____ mg/hr IV drip |
| | ☐ DT 0.5mL IM |
| | ☐ Erythromycin ophth ointment ____ R L eye(s) |
| | ☐ Fentanyl ____ mCg IV |
| | ☐ Flagyl (Metronidazole) 250 500 mg IVPB Po |
| | ☐ Gentamicin ____ mg IM IVPB (Sepsis 3-7 mg/kg) |
| | ☐ Geodon (Ziprasidone) 10 or 20 mg Po IM |
| | ☐ GI Cocktail 55 mL Po or ____ mL Po |
| | ☐ Heparin bolus 80 units/kg (max dose 4000) units ____ IVP |
| | ☐ Heparin drip 25,000 units/250 mL D5W 15 units/kg |
| | ☐ Hypotet 250 500 units IM |
| | ☐ Imitrex (Sumatriptan) 6 mg SubQ |
| | ☐ Labetolol ____ mg 20 40 80 160 IV |
| | ☐ Lasix (Furosemide) ____ mg Po IV |

| Time | IVS |
|---|---|
| | ☐ Saline lock |
| | ☐ Normal saline ____ mL |
| | ☐ Infusion ☐ ≥ 15 Min ☐ ≥ 30 Min ☐ ≥ 60 Min |
| | ☐ Hydration ☐ ≥ 15 Min ☐ ≥ 30 Min ☐ ≥ 60 Min |
| | ☐ Repeat ____ mL ____ Min |
| | ☐ Repeat ____ mL ____ Min |
| | ☐ D10W ____ mL (neonatal 10mL/kg) |
| | ☐ D25W ____ mL (peds 30d-2y: 4 mL/kg) |
| | ☐ D50W ____ mL (peds over 2y: 2 mL/kg max 50 mL) |
| | ☐ D10W ____ mL/Hr |
| | ☐ D5 1/2NS ____ mL/Hr |
| | ☐ Maintenance ____ mL/Hr |
| | ☐ KCL ____ mEqL ☐ KPhos ____ mMol/L (1 mMol = 1.5 mEq) |
| | ☐ Po trial ____ mL every ____ minutes ☐ ad lib |

| Time | MEDICATIONS (cont'd) |
|---|---|
| | ☐ LET topical to ____ x 3 |
| | ☐ Levaquin (Levofloxacin) ____ mg 250 500 mg Po IVPB |
| | ☐ Lovenox (Enoxaparin) ____ mg SubQ |
| | ☐ Metoprolol 5 mg IVP over 2 Min q 5 Min x 3 doses |
| | ☐ Metoprolol 25 mg Po x 1 |
| | ☐ Contraindicated (HR less than 60, SBP less than 90, CHF, COPD) |
| | ☐ Morphine ____ mg 2 3 4 5 q 5 Min SubQ IM IV total dose ____ mg |
| | ☐ Motrin (Ibuprofen) ____ mg 200 400 600 800 mg (10 mg/kg) Po per standardized procedure |
| | ☐ Narcan (Naloxone) ____ mg or titrate 0.1 mg q 2 Min IV to desired effect |
| | ☐ Nicorette gum 1 to chew |
| | ☐ Norco 5 7.5 10 mg Po |
| | ☐ Norflex (Orphenadrine) 60 mg IV over 10 Min IM |
| | ☐ NTG 0.4 mg SL q 5 Min x 1 2 3 |
| | ☐ NTG drip 10 mCg/Min titrate q 5 Min to ____ mCg/Min, maintain SBP greater than 90 |
| | ☐ Pepcid (Famotidine) 20 40 mg Po IV |
| | ☐ Phenergan (Promethazine) ____ mg 12.5 25 mg IM IV over 10-15 Min to total of ____ mg |
| | ☐ Potassium Chloride ____ 20 30 mEq Po |
| | ☐ PrednisoLONE ____ mg Po |
| | ☐ Prednisone ____ mg Po |
| | ☐ Procainamide ____ mg IV ____ mg/Min IV |
| | ☐ Protonix (Pantoprazole) 20 40 mg Po IV |
| | ☐ Racemic epinephrine 0.25 0.5 mg/3mL NS by HHN x 1 2 |
| | ☐ Reglan (Metoclopramide) ____ mg 10 mg Po IM IV |
| | ☐ Rocephin (Ceftriaxone) ____ mg 250 500 mg 1 Gm 2 Gm IM IV |
| | ☐ Solu-Medrol (Methylprednisolone) ____ mg 40 125 250 mg IM IV |
| | ☐ Tdap 0.5 mL IM |
| | ☐ Toradol (Ketorolac) 15 30 60 mg IM IV |
| | ☐ Unasyn (Ampicillin-Sulbactam) ____ Gm 1.5 3 Gm IVPB |
| | ☐ Versed (Midazolam) ____ mg IM IV IN |
| | ☐ Zofran (Ondansetron) ____ mg 2 4 8 mg Po IM IV (peds: 0.1 mg/kg) |
| | ☐ Zosyn (Piperacillin-Tazobactam) ____ Gm 3.375 gm IVPB (peds: 80 mg/kg) |

| Time | ADDITIONAL ORDERS |
|---|---|
| | ✱ Assist By Law Enforcement |
| | ✱ Paper Work ✓ |
| | ☐ |
| | ☐ |
| | ☐ |

Time: ______ MD/PA ☐ ORDERS NOTED SECRETARY
Time: ______ MD/PA ☐ ORDERS NOTED RN ______ TIME/INITIALS ______ TIME/INITIALS ______ TIME/INITIALS

St. Joseph Hospital ST. JOSEPH HEALTH SYSTEM CHOC

EMERGENCY DEPARTMENT PHYSICIANS
NOTES AND ORDERS

EDF6

7010-017A (9/27/07)

PATIENT ID:
MM01351057 05/25/2011
RA7012337134 SJO
Davis, Joann L
F 73 DOB05/04/1937
Unassigned

Fax (Ctrl+P to print) Page 1 of 1

5/1/2012 10:11 AM 280165 -> 19088819238 14

Date: 5/25/11 Time: 1410 Staff: [illegible] Dipstick Lot #: 1A664 Exp. Date: 7/1/12

| Dipstick | Results | | | | | | | Normal Values |
|---|---|---|---|---|---|---|---|---|
| Color | Yellow | Red | Blue | Orange | Green / Brown | Other: | | Yellow |
| Clarity | Clear | Sl Cloudy | Cloudy | Turbid | Other: | | | Clear |
| Glucose | Negative | | | 100 mg/dl | 250 mg/dl | 500 mg/dl | Greater than or Equal to 1000 mg/dl | Negative |
| Bilirubin | Negative | | | | Small 1+ | Moderate 2+ | Large 3+ | Negative |
| Ketones | Negative | | Trace 5 mg/dl | Small 15 mg/dl | Moderate 40 mg/dl | Large 80 mg/dl | Large - Greater than or Equal to 160 mg/dl | Negative |
| Specific Gravity | Less than or equal to 1.005 | | 1.010 | 1.015 | 1.020 | 1.025 | Greater than or Equal to 1.030 | 1.001-1.035 |
| Blood | Negative | | | Trace | Small 1+ | Moderate 2+ | Large 3+ | Negative |
| pH | 5.0 / 5.5 | 6.0 | 6.5 | 7.0 | 7.5 | 8.0 | 8.5 / Greater than or Equal to 9.0 | 5.0-8.0 |
| Protein | Negative | Trace | | | 30 mg/dl 1+ | 100 mg/dl 2+ | Greater than or Equal to 300 mg/dl 3+ | Negative |
| Urobilinogen | 0.2 mg/dl | 1.0 mg/dl | | | 2.0 mg/dl | 4.0 mg/dl | Greater than or Equal to 8.0 mg/dl | 0-1.0 mg/dl |
| Nitrite | Negative | | | | | | Positive | Negative |
| Leukocytes | Negative | | | Trace | Small 1+ | Moderate 2+ | Large 3+ | Negative |

INSTRUCTIONS: Circle the results on this form, place result label on back of yellow copy sheet. Sample is useable for further testing for 1-2 hours from the collection time. Post one copy in the patient chart. Place one copy in the box for review.
NOTE: Strongly colored urines may cause false positive results. If so, report "NA" (not available), recommend send sample to lab.

| Urine HCG | Positive | Negative | Equivocal due to low Sp. Gravity | Specific Gravity | Internal Controls OK? | Kit lot #: Exp. date: Normal Urine HCG - Negative |
|---|---|---|---|---|---|---|

INSTRUCTIONS: Perform test as per manufacturer's instructions. Circle test results on this form. If test is negative and has a low Sp. Gravity (Less than or Equal to 1.005), report equivocal and order serum test. Report Specific Gravity and Pregnancy test. Check if internal controls were OK. Post one copy in the patient chart. Place one copy in the box for review.

| Fecal Occult Blood | Positive | Negative | Internal Controls OK? | Card lot #: exp. Developer lot #: exp. Normal Gastroccult - Negative |
|---|---|---|---|---|

INSTRUCTIONS: Perform test as per manufacturer's instructions. Circle test result. Check if internal controls were OK. Post one copy of the form on the patient chart. Place one copy in the box for review.

| Gastroccult | Positive | Negative | Internal Controls OK? | Card lot #: exp. Developer lot #: exp. Normal Gastroccult - Negative |
|---|---|---|---|---|

INSTRUCTIONS: Perform test per manufacturer's instructions. Circle test results. Check if internal controls were OK. Post one copy of form on patient chart. Place one copy in the box for review.

Reviewed by:
☐ No Action Necessary
☐ Action Required

St. Joseph Hospital
ST. JOSEPH HEALTH SYSTEM
1100 W. Stewart Dr.
Orange, CA 92868

ED PATIENT RESULT RECORDING FORM

PATIENT I.D.
MH01351067 05/25/2011
B87012337134 SJO
Davis, Joann L
F 73 DOB08/04/1937
La Rocca, Brad (ER)

White - Chart Copy * Yellow - Clinical Lab POCT

St. Joseph Hospital
Children's Hospital of Orange County
1100 West Stewart Drive
Orange, CA 92868
714-771-8233

TAKE HOME INSTRUCTIONS FOR PATIENT

DAVIS, JOANN L
DOB: 06/04/1937
Age/Sex: 73/F

AA7012337134
MM01351067
REG ER

Service date/time: 05/25/11 1121
Depart date/time:
Depart Disposition: HOM
Physician: LA ROCCA, BRAD M MD

I hereby acknowledge receipt of the instructions indicated above. I understand that I have had emergency treatment and that I may be released before all my medical problems are known or treated. I will arrange for followup care as instructed above.

The list of medications has been reviewed and reconciled. You are instructed to contact the prescribing physician for any questions related to resuming home medications at discharge. In addition, any medication that has been prescribed as a result of your visit has been noted as well.

I give authorization for the Emergency Department to furnish medical record information to my physician.

CHILD RESTRAINT - California Law Requires All Infants/Children UNDER 8 Years/60 Pounds Be Secured
In A Passenger Restraint System When In A Motor Vehicle. In Addition, California Law Requires
All Children OVER 8 Years/60 Pounds Be Secured In A Properly Fitted Seat Belt. If You Need Additional
Information, Please Contact CHOC Child Passenger Safety Program, 714-289-4085 (English) or 714-289-4091 (Spanish).

Patient Signature: ______________________ Date: __________

I have explained the instructions and have given a copy to the patient.

Discharge Personnel Signature: ______________________ Date: __________

DATE: 05/24/11 @ 0004 St. Joseph's Hospital EDM **LIVE** PAGE 1
USER: [illegible] EDM SUMMARY REPORT FORMAT [illegible]

Patient: DAVIS,JOHNNY L Age/Sex: 74/M Acct No: [illegible]
ED Provider: LA ROCCA,BRAD M MD Unit No: [illegible]

Patient Information

ED Physician: LA ROCCA,BRAD M MD Arrival Date/Time: 05/25/11 - 1115
Practitioner: GREEN,GEOFFREY A Triage Date/Time:
Nurse: HEROLD,CECILIA A

Stated Complaint: TAILBONE PAIN, ARM PAIN S/P ASSAULT
Chief Complaint: Alleged Assault Priority: 4
Status Event History:
05/25/11 1121 Registration
1238 MSE-With Doctor
1422 Ready for Depart
1442 Depart

Vital Signs

| Time | Temperature | Pulse Rate | Systolic | Diastolic | Respiratory Rate | O2 Sat | User |
|---|---|---|---|---|---|---|---|
| 1211 | 96.8 | 87 | 144 | 85 | 18 | 98 | MCUSTIER |

Triage

05/25/11 1216 Triage Documentation CUSTIER,MICHELLE M
Patient Information:
History of Present Illness: pt states assaulted by 3 law enforcement officers went to speak with Nasa agent in regards to an artifact acquired by agents at a Dennys Lake Elsinor c/o pain to left arm only with touch [illegible] noted, + right wrist pain with movement & ROM, and back pain
Means of Arrival Private Auto
Accompanied By self
To ED Ambulatory
Treatment PTA None
Patient Medical History:
Does Patient Have Any Medical History? Y
Comment high cholesterol

Additional Assessments

05/25/11 1210 Abuse Screen CUSTIER,MICHELLE M
Abusive Relationship N; History of Abuse in the Last 2 Years? N;
Do You Feel Unsafe Returning Home? Y

05/25/11 1211 ED Vital Signs CUSTIER,MICHELLE M
Temperature 96.8; Temperature (Calculated Celsius) 36.00; Temperature Source Oral;
Pulse Rate 87; Respiratory Rate 18; O2 Sat 98; Systolic 144; Diastolic 85; Mean 104;
Blood Pressure Location Left Arm; Blood Pressure Source Automatic Cuff; Weight (Kg) 87

05/25/11 1253 RADIT ADULT Triage Assessment CUSTIER,MICHELLE M
RADIT Assessment WNL WDL Except; Current Pain Y; Patient Verbal Y; Pain Site Left Location Arm; Pain Scale Used Verbal Numeric (0-10); Intensity 3; Description Constant;
Pain Management Goal 1; Pain Reassessment Reports Pain Tolerable

05/25/11 1440 Discharge Assessment Group HEROLD,CECILIA A
Pt Information + Financials Complete? Financials Complete; RADIT Assessment WDL WDL;
Disposition Discharged Home; Education Learning Preference Hearing;
Discharge Information Given Discharge Instructions; Methods Verbal Instructions;

Patient: DAVIS,JOHNNY L

Patient: DAVIS,JOANN [illegible] Age/Sex: [illegible]/F Acct No: [illegible]
ED Provider: LA ROCCA,BRAD M MD Unit No: [illegible]

Written Material; Teaching Recipient Patient; Response to Teaching Verbalized Understanding; Discharge Mode Ambulatory; Accompanied By Self; Mode of Transportation Ambulatory;
Pain Site Left; Location Arm

**Allergies**

[illegible] (Drug Allergy) [illegible]

**Departure**

Primary Impression:
Contusion back, buttocks
Additional Impressions:
Disposition: HOME, SELF-CARE
Comment:
Condition: STABLE

Departure Date/Time: 05/25/11 - [illegible]

Referrals:
[illegible] MD Referral
Ph: (7[illegible]) [illegible]-3[illegible]
Follow-up Plan: As Needed

Pt Instructions: BACK INJURY, CONTUSIONS, PAIN - HEAT & ICE THERAPY, PHYSICIAN ASSISTANT [illegible]

Departure Forms:

Patient: DAVIS,JOANN [illegible]

ST. JOSEPH HOSPITAL - ORANGE
1100 West Stewart Drive
Orange, Ca. 92868

Guarantor: DAVIS,JOANN L
Guar Addr: 15271 ALVARADO ST
Guar City: LAKE ELSINORE CA 92530

PT NUMBER: AA7012337134 NAME: DAVIS,JOANN L

TOTAL CHARGES: 495.45
TOTAL PAYMENTS: 81.11
TOTAL REFUNDS:
TOTAL ADJUSTMENTS: 414.34
CURRENT BALANCE: 0.00

ZZEMD:

1ST INS: MCAR010 MEDICARE AB
2ND INS: UNI1511 UNITED HEALTHCARE INDEMNITY

ADM: 05/25/2011 INS GROUP: MCR
DIS: 05/25/2011 ACCT TYPE: ER

| SERVICE DATE | BATCH NUMBER | BILL # | REV CODE | PROC CODE | DESCRIPTION | QTY | AMOUNT | INS BUCKET |
|---|---|---|---|---|---|---|---|---|
| 05/30/11 | 5 | 1 | | 86400 | MCAR010 M-CARE IP & OP CA | 1 | -0.01 | MCAR010 |
| 06/16/11 | 106 | 1 | | 35299 | MEDICARE O/P C/A | 1 | -394.06 | SP |
| 06/16/11 | 106 | 1 | | 20000 | RJ APPLIED TO DEDUCTABLE | -1 | 0.00 | SP |
| 06/16/11 | 106 | 1 | | 20000 | RJ APPLIED TO DEDUCTABLE | -1 | 0.00 | SP |
| 06/23/11 | 189 | 1 | | 20000 | RJ APPLIED TO DEDUCTABLE | -1 | 0.00 | SP |
| 07/29/11 | 244 | 1 | | 37070 | SMALL BALANCE WRITE OFF (AUTO) | 1 | -20.27 | SP |
| | | | | | **Sub-Total** | | -414.34 | |
| | | | | | ADJ TOTAL: | | -414.34 | |
| 05/25/11 | 312 | | 300 | 41221522 | POC DIPSTICK W/O UA | 1 | 56.85 | |
| | | | | | **Sub-Total** 300 LABORATORY | | 56.85 | |
| 05/25/11 | 312 | | 450 | 41500207 | ED LEVEL 2 (BRIEF) | 1 | 438.60 | |
| | | | | | **Sub-Total** 450 EMERGENCY ROOM | | 438.60 | |
| | | | | | CHG TOTAL: | | 495.45 | |
| 06/16/11 | 106 | 1 | | 16050 | MEDICARE INS PMT | 1 | -8.79 | SP |
| 06/23/11 | 189 | 1 | | 19030 | UNITED HEALTHCARE PMT | 1 | -72.32 | SP |
| | | | | | **Sub-Total** | | -81.11 | |
| | | | | | RCP TOTAL: | | -81.11 | |

52

UNITED STATES POSTAL SERVICE ORIG

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Schlueter & Schlueter
108 Orange St #8
Redlands CA
92373

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

General Counsel
Nat. Aero. & Space Admin.
Washington DC
20546

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) WHORLEY

C. Date of Delivery 6/6/12

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7011 3500 0000 4998 1040

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

**EDCV13- 483 VAP (DTBx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[X] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Jon Schlueter (106302)/Peter Schlueter (155880)
Schlueter & Schlueter
108 Orange Street, Suite 8
Redlands, CA 92373
Phone: 909.381.4888 / Fax: 909.381.9238
SchltrLegal@aol.com/PeterinLa@aol.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Joann Davis, an individual, and Paul Cilley, an individual, PLAINTIFF(S) ED | CASE NUMBER CV 13 - 0483 VAP(DTBx) |
| v. | |
| The United States of America, Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, Gary Lofgren, and Does 1 through 10 DEFENDANT(S). | **SUMMONS** |

TO: DEFENDANT(S): ______________________

A lawsuit has been filed against you.

Within 60 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Peter Schlueter/ Jon Schlueter, whose address is 108 Orange Street, Suite 8, Redlands, CA 92373. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: MAR 14 2013

By: ADRIENE MORRIS
Deputy Clerk

(Seal of the Court)

SEAL OF THE U.S. DISTRICT COURT CENTRAL DIST. OF CALIFORNIA
1210

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

I (a) PLAINTIFFS (Check box if you are representing yourself ☐)
Joann Davis, an individual, and Paul Cilley, an individual,

DEFENDANTS
The United States of America, Norman Conley, Thomas Reynolds, Mike Harrison, Robert Schmidt, Patricia Searle, Gary Lofgren, and Does 1 through 10

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Peter B. Schlueter (155880), Jon R. Schlueter (106302), Schlueter & Schlueter, 108 Orange Street, Suite 8, Redlands, CA 92373
Phone: (909)381-4888, Fax: (909)381-9238

Attorneys (If Known)
unknown

II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. ORIGIN (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

V. REQUESTED IN COMPLAINT: JURY DEMAND: ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☐ Yes ☑ No ☑ MONEY DEMANDED IN COMPLAINT: $ not less then $10,000.00

VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. Sect. 1983 - Officers arrested clients without probable cause and used excessive force against Davis and Cilley.

VII. NATURE OF SUIT (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☑ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☑ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☑ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☑ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: ED CV 13 - 0483 VAP (DTB)

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): CV12-05904 CBM (CSPx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☑ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Joann Davis- Riverside<br>Paul Cilley - Riverside | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 03/14/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |