1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN DAVIS AND PAUL CILLEY,<br><br>       Plaintiffs,<br><br>     vs.<br><br><br>UNITED STATES OF AMERICA, NORMAN CONLEY, THOMAS REYNOLDS, MIKE HARRISON AND PATRICIA SEARLE<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. EDCV 13-0483 CBM (SPx)<br><br>ORDER GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). (Dkt. 34.)  Defendants' Motion seeks judgment on all of Plaintiffs' claims.  The Motion is fully briefed, and oral arguments were heard.

## I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Joann Davis ("Plaintiff" or "Davis") was married to Robert Davis, an

engineer at North American Rockwell, until Robert Davis died in 1986. (Plaintiffs' First Amended Complaint ("FAC") ¶ 14 (Dkt. 16).)  Davis alleges that at some time during the 1970s, Robert Davis brought home two paperweights. (*Id.* ¶15.)  One of these paperweights contained a small portion of the Apollo 11 heat shield, and the other contained tiny pieces of lunar material ("moon rocks"). (*Id.* ¶ 15.)  Following Robert Davis' death, Mrs. Davis kept the paperweights.  (*Id.* ¶ 15-16.)  Davis remarried in 1991 and her new husband, Paul Cilley ("Cilley"), is also a plaintiff in this case (collectively, Cilley and Davis are the "Plaintiffs").

In the spring of 2011, Davis came across difficult financial times and sought to sell the paperweights.  (*Id.* ¶18.)  Because Davis had difficulty selling the paperweights on her own, she contacted NASA on May 10, 2011 through an email address she found on the NASA website.  (Declaration of Joann Davis in Opposition to Defendants' Motion for Summary Judgment ("Davis Decl."), ¶13-17 (Dkt. 51).)  Davis explained that she wanted "to find someone that could help [her] find a buyer for 2 rare Apollo 11 space artifacts."  (*Id.* ¶ 17.)  Davis also stated that these items were given to her late husband by Neil Armstrong and that one of the artifacts contained an "Apollo 11 Moon Rock."  (*Id.*)  Davis provided her phone number and email address and asked that NASA contact her.  (*Id.*)

Davis' email was forwarded to the NASA Office of the Inspector General ("OIG") at the Kennedy Space Center in Florida.  Defendant Searle, the Resident Agent in Charge for the NASA OIG, received the email and assigned Defendant Conley, a Special Agent and Criminal Investigator for the OIG, to engage a registered confidential source (the "RS") to conduct a series of monitored phone calls with Davis to learn more about the alleged lunar material.  (Motion, Ex. 2, Declaration of Patricia Searle in support of Federal Defendants' Motion for Summary Judgment ("Searle Decl.") at ¶¶ 7-8 (Dkt. 34-10).)

A few hours after Davis sent the email to NASA, The RS called Davis.  The RS introduced himself to Davis as "Jeff" and told her that he was a broker who would help Davis sell the paperweight containing the moon rocks.  (Davis Decl. ¶ 18-19.)   Davis and the RS exchanged several telephone calls over the next week discussing the sale of the moon rock paperweight to the RS's fictitious buyer.  (Motion, Attach. A-H.)  Davis stated that she thought the moon rocks were worth a lot of money and she told the RS that she was in negotiations with Richard Branson (the President of Virgin Airlines) who was interested in buying the moon rocks from her.  (Motion, Ex. 3, Conley Affidavit in support of Search Warrant ("Conley Affidavit"), ¶ 11 (Dkt. 34-11); Motion, Attach. B (Dkt. 34-3), p. 47.)  The RS told Davis that he found a buyer for her moon rock, and that his buyer would buy the moon rock for $1.7 million.  (*Id*.)

On May 18, 2011, less than ten days after Davis' initial email to NASA, the RS called Davis to advise her that he was in Southern California and was ready to meet with her.  (Motion, Attach. G (Dkt. 34-8).)  They planned to meet the following day in a public location to finalize a sale of the moon rocks.  (*Id*.)

On May 19, 2011, Defendant Conley requested and obtained a search warrant to search Davis and to seize the moon rock.  In the affidavit supporting the requested search warrant, Defendant Conley stated that, pursuant to the National Aeronautics and Space Act of 1958, 42 U.S.C. §2473, and NASA Policy Directive 13.87 the United States government owns any items associated with the Apollo missions.  (Conley Affidavit ¶¶ 14, 15.)  Conley also stated that, based on the photographs of the moon rock that Davis sent to the RS, an expert at NASA (Dr. Lofgren) could not determine whether or not the moon rock was authentic.  (*Id*. ¶ 12.)  Based on the recorded calls between the RS and Davis, and the inability to determine the moon rock's authenticity, Conley submitted that there was probable cause to believe that Davis was "in possession of contraband, evidence of a crime,

fruits, and instrumentalities of the crime concerning a violation of Title 18, United States Code, Section 641." [1]  (*Id.* ¶ 16.)  Defendant Searle, who reviewed the affidavit while in the NASA facility in Florida, also "believed that Davis was in possession of stolen government property (an Apollo 11 lunar sample) in violation of 8 U.S.C. §641" based on the statutes, NASA policies and directives, and recorded telephone calls.  (Searle Decl. ¶13.)  Defendant Searle reviewed and approved the affidavit used to support the search warrant.  (*Id.*)  A magistrate judge for this Court issued the search warrant and authorized Defendants "to search Joann L. Davis' person and the personal effects carried on or about [her], for evidence, fruits, and instrumentalities concerning violations of Title 18 United States Code, Section 641" and to seize "the purported Apollo 11 lunar material offered for sale by Davis."  (Conley Affidavit ¶¶ 4, 6, 7.)

After securing the warrant, the RS, Defendants Conley, Reynolds, and Harrison, and three Riverside County Sheriff's personnel assisting the operation who are not Defendants, went to a Denny's restaurant in Lake Elsinore, California to serve the warrant on Davis.  (Declaration of Norman Conley in Support of Federal Defendants' Motion for Summary Judgment ("Conley Decl."), ¶21 (Dkt. 34-1).)  All of the officers were in plain clothes.  (*Id.*)  The RS called Davis to meet him at the Denny's Restaurant, and she agreed.  (Davis Decl. ¶ 20.)

---

[1] 8 U.S.C. §641 reads:

Public money, property or records.  Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

Davis arrived at the Denny's restaurant with Cilley intending to meet "Jeff" and to sell the paperweights.  Upon entering the restaurant, the RS greeted Davis and Cilley and invited them to his table.  After a few moments of conversation, Davis put both paperweights on the table. (Davis Decl. ¶ 24.)  Shortly thereafter, a hand grabbed for the moon rock paperweight and Davis and Cilley were restrained.  (Davis Decl. ¶ 25-26.)  Defendants Conley and Harrison exerted some force on Cilley.  At some point, Davis lost control of her bladder and suffered bruises and soreness.  (Davis Decl. ¶ 26-27.)

After the altercation subsided, Plaintiffs were patted down for weapons and were taken outside into the parking lot.  Neither Plaintiff was armed. Davis was then questioned and searched, and the moon rocks were confiscated.  Cilley was driven home by officers.  As Davis was questioned, she was not permitted to clean herself despite her earlier loss of bladder control.  After more than an hour and a half, Davis was given permission to drive herself home.  At her home, she was told that she could not go inside, then, later, she was told that she could sit in her kitchen.  (Davis Decl. ¶ 32.)  She was still not allowed to go to the bathroom or change her clothes.  (*Id.*)  Defendants retained possession of paperweight containing the moon rocks.  (*Id.* ¶ 33.)

After Dr. Gary Lofgren, NASA's senior lunar expert, determined that the moon rocks were authentic, Defendant Searle, authorized Defendant Conley to open a full investigation of the matter.  (Searle Decl. ¶17.)   The United States Attorney in Orlando Florida issued a formal declination to prosecute Davis, and Defendant Searle approved closing the investigation.  (*Id.*)  Neither Davis nor Cilley were charged with a crime.

Plaintiffs filed this lawsuit against the United States government and the NASA officials involved in the altercation.  In Plaintiffs' first amended complaint they brought ten causes of action:  (1) Conversion, (2)  Battery, (3) False

Imprisonment, (4) Abuse of Process, (5) Negligence,  (6) Petition for Return of Property, (7) Violation of the Fourth Amendment by Deprivation of Plaintiffs' Rights to be Free from Physical Abuse and Excessive Force, (8) Wrongful Search and Seizure under the Fourth and Fifth Amendments, (9) Wrongful Taking in Violation of the Fourth and Fifth Amendments, and (10) Wrongful Detention and Arrest in Violation of the Fourth and Fifth Amendments.

## I.  STATEMENT OF LAW

Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of establishing the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  "Conclusory, speculative testimony … is insufficient to raise genuine issues of fact and defeat summary judgment."  *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007).

## II.  DISCUSSION

### A.  Plaintiffs' Ownership of the Moon Rock

A key issue in this case is: who can own a moon rock?  Defendants argue that only the United States government is entitled to own lunar material obtained from its NASA missions.  Defendants provide statutory authority supporting that private persons cannot own lunar material.  *See* National Aeronautics and Space Act of 1958, Pub. L. No. 111–314; NASA Policy Directive 1387.2F.  Plaintiffs

also provide excerpts of Dr. Lofgren's deposition testimony, which states that "lunar samples were deemed NASA property, and [the United States has] exclusive control over them." (Declaration of Jon R. Schlueter in Opposition to Motion for Summary Judgment, Ex. 4 (Dkt. 49-4).) Plaintiffs argue that the moon rocks in the paperweight are their lawful property because the United States government gave Robert Davis the paperweight as a gift or an award. The evidence before this Court, however, demonstrates only that Davis believes the paperweights were given to her late husband. (Davis Decl. ¶ 9.) There is no evidence that Davis' late husband ever legally owned or acquired the paperweights, and there is no evidence supporting Plaintiffs' argument that the United States gave Robert Davis the moon rocks. In fact, the evidence before the Court proves that Plaintiffs do not know how nor when Robert Davis acquired the moon rock. (*See* Davis Decl. ¶¶ 8-9.) Because Plaintiffs provide no evidence that Robert Davis acquired the paperweights lawfully, Davis' speculation that her late husband received the lunar material as a gift or award fails to create a material issue of fact. *See Soremekun*, 509 F.3d at 984. Defendants are therefore entitled to summary judgment on all of Plaintiffs' claims in which Plaintiffs' lawful ownership of the moon rocks is an element. Accordingly, the Court grants summary judgment as to Plaintiffs First Cause of Action for Conversion, Sixth Cause of Action for Petition for Return of Property, and Ninth Cause of Action for Wrongful Taking under the Fifth Amendment.

**B.    Moving Party's Burden on Summary Judgment**

As Defendants moved for summary judgment, they bear the initial burden of establishing the basis for their motion and identifying those portions of the pleadings and discovery responses that demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. In their moving papers, Defendants fail to establish the basis of their motion as to Plaintiffs' Third, Fourth, and Fifth

Causes of action (false imprisonment, abuse of process, and negligence). Accordingly, the Court cannot find that Defendants have met their initial burden under the federal rules, and summary judgment as to these claims is denied.

## C.   Remaining Causes of Action

The following causes of action remain for analysis:  Battery, Excessive Force, Wrongful Search and Seizure, and Wrongful Detention.

### 1. Plaintiffs' Second Cause of Action: Battery

Plaintiffs bring a battery claim under the Federal Torts Claims Act ("FTCA").  28.U.S.C. §1346.   Sections 1346(b) and 2674 of the FTCA provide that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. §2674.  In "an action under the FTCA, a court must apply the law the state courts would apply in the analogous tort action." *Rhoden v. United States*, 55 F.3d 428, 431 (9th Cir. 1995).   To prevail on their battery claim, Plaintiffs must provide evidence "that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012).

Evidence establishes that two federal employees, Mr. Conley and Mr. Harrison, touched Plaintiff Cilley.  (*See* Declaration of Michael Harrison ("Harrison Decl.") at ¶¶ 15-16.)  There is no evidence that any federal employee touched Plaintiff Davis.[2]  Davis declares that she saw "out of the corner of one eye" two men grabbing Cilley, "[o]ne man had his arm around [Cilley's] neck

---

[2] Evidence shows that Davis was touched by Riverside officer Robert Cornett, who is not a defendant in this case and who is not a federal employee.  (*See* Davis Decl., Ex. 4; Declaration of John R. Schlueter in Opposition to Motion for Summary Judgment, Ex. 2,  p. 83-84).

from behind.  The other grabbed his left arm and bent his hand back and got him to the floor…on his knees." (Davis Decl. ¶26.)  Defendants provide evidence that Agent Conley and Defendant Harrison "secured Mr. Cilley's left arm and wrist" after "Cilley began moving his arms and hands toward his waistband" and the Defendants "became concerned [he] might be reaching for a weapon." (Conley Decl. ¶ 26; Harrison Decl. ¶ 14-15.)

Plaintiffs does not provide any evidence creating a material issue of fact in dispute as to whether any United States employee touched Cilley with the intent to harm or offend Cilley.  Plaintiffs' battery claim, therefore, cannot withstand summary judgment.

## D.   *Bivens* Claims Against Individual Defendants

Plaintiffs also allege violations of their Fourth and Fifth Amendment rights under the United States Constitution against the Individual Defendants Conley, Reynolds, Harrison, and Searle.  There is a private right of action against federal officials who violate the constitutional rights of others.  *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

### 1.  Plaintiffs' Seventh Cause of Action: Excessive Force

Defendants move for summary judgment on Plaintiffs' Seventh cause of action under the doctrine of qualified immunity.  (Motion at 12).  In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).  The first question is whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right, and the second question is whether the right in question was "clearly established" at the time of the violation.  *Id*.

For qualified immunity, this Court must first consider whether the evidence, taken in the light most favorable to Plaintiffs, show that the Defendants' conduct

violated a federal right.  The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (quoting  *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).   The Court pays "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).   Here, Plaintiffs were accused of a property crime—possessing and attempting to sell government property (the moon rocks).  Plaintiffs were an elderly couple who posed no actual threat to Defendants.  However, it is undisputed that Conley and Harrison were concerned about Cilley possessing a firearm.  While the amount of force applied to Cilley is disputed, there is no evidence creating a dispute that Defendants' actions (regardless of what they precisely were) were unreasonable given Defendants' concern.   Plaintiffs, therefore, cannot show that Defendants' conduct violated a federal right—even viewing the evidence in the light most favorable to Plaintiffs.  *See Tolan*, 134 S. Ct. at 1866 (2014) (holding that "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions").

As Plaintiffs fail to establish a genuine issue of material fact as to whether Defendants used excessive force, this Court need not reach the second question under qualified immunity and analyze whether the federal right was "clearly established."  *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009).  The Court grants summary judgment in favor of Defendants as to Plaintiffs' seventh cause of action.

### 2.  Plaintiffs' Eighth Cause of Action: Wrongful Search & Seizure

Defendants move for summary judgment on Plaintiffs' Eighth Cause of

Action under the doctrine of qualified immunity and under the argument that Defendants acted reasonably in the course of obtaining a warrant for a search of Davis and seizure of the moon rocks.   (Motion at 23-24.)

Plaintiffs argue that their Eighth Cause of Action is a claim for judicial deception and that their claim is supported by evidence that Defendants Conley and Searle falsified the affidavit supporting the search warrant.  (Opposition to Motion for Summary Judgment ("Opposition"), pp. 19-21 (Dkt. 48).)  To survive summary judgment on a claim of judicial deception, a plaintiff must (1) make "a substantial showing of deliberate falsehood or reckless disregard for the truth," and (2) "establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (per curiam) (internal quotations and citations omitted).  The Ninth Circuit has "applied the rule that summary judgment on the ground of qualified immunity is not appropriate once a plaintiff has made out a judicial deception claim." *Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011).

To support a claim of judicial deception, Plaintiffs rely on a redlined affidavit showing changes that Defendant Conley made to an early draft of his affidavit as compared to the final affidavit submitted to the magistrate judge. (Declaration of Jon Schlueter in Opposition to Motion for Summary Judgment, Ex. 3 (Dkt. 52-3).)   Plaintiffs argue that the redline edits show that Conley deleted citations to NASA policies that were in an earlier draft and that Conley omitted the date of the NASA policy he relied upon.  Plaintiffs further argue that Conley intentionally "kept the Magistrate from seeing that the policies were late in coming, after the Apollo program and after the award would have been made." (Opposition at 21:3-5.)  Plaintiffs argue, "the fact that Conlely (sic) took this information out of a previous draft shows that he knew that he was fooling the magistrate."  (*Id.* at 6-7.)  However, the affidavit submitted to the magistrate judge

stated:

> Based on the Space Act of 1958 and its interpretation via federal
> regulations and NASA policies, it is clear that lunar material is a
> 'natural resource,' and thus, the property of the U.S. Government.
> (National Aeronautics and Space Act of 1958, 42 U.S.C. § 247;
> NASA Policy Directive 1387.2F).

(Conley Affidavit ¶ 14.)

"To determine the materiality of omitted facts, we consider 'whether the affidavit, once corrected and supplemented, establishes probable cause.'" *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011) (quoting *Ewing v. City of Stockton,* 588 F.3d 1218, 1224 (9th Cir.2009)).  Here, had the Defendants included the omitted dates and NASA policies, the affidavit still would established probable cause that Plaintiffs were in violation of 8 U.S.C. §641.

Conley's affidavit stated that Davis told NASA's registered confidential source ("RS") that Davis possessed authentic moon rocks.  (Conley Affidavit ¶¶ 11, 12.)  The affidavit also stated that moon rocks acquired by Apollo missions are, and have always been, the lawful property of the United States Government. (Conley Affidavit ¶¶ 12, 14.)  Plaintiffs, conversely, do not provide evidence that they were ever in lawful possession of the moon rocks.  Plaintiffs fail to provide evidence that including the omitted information would have precluded a finding of probable cause.  The Court grants Defendants summary judgment motion as to Plaintiffs' Eighth Cause of Action.

### 3.  Plaintiffs' Tenth Cause of Action: Wrongful Detention

For Fourth Amendment purposes, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (citation omitted).  However, there is a

caveat: "[S]pecial circumstances, or possibly a prolonged detention," might lead to a Fourth Amendment violation "in an unusual case..." *Michigan v. Summers*, 452 U.S. 692, 705 n. 21 (1981).  Even "limited detentions" may be unreasonable if the facts show unnecessary degradation.  *Franklin*, 31 F.3d at 876.

Plaintiffs provide evidence that Defendants detained Davis, a 73 year old woman, for approximately two hours with urine-soiled clothing and prevented her from using the restroom.  (Davis Decl. ¶¶ 28-31.)  Defendants apprehended Davis in a Denny's parking lot, and Defendant Conley threatened to take her in to the police station while "a big deputy wearing a flack jacket" pushed her every time she shifted or stepped backward.  (*Id.* ¶ 29-30.)  Davis was humiliated.  (*Id.* ¶26.) When Davis was eventually allowed to drive herself home, she was only permitted to sit in her kitchen and she was still "not allowed" to go to the bathroom and dry her soiled clothing.  (*Id.* ¶ 31, 32.)

Defendants dispute the length and lawfulness of Plaintiffs' detention. However, Plaintiff Davis' declaration raises a material dispute of facts precluding summary judgment.  *See Franklin*, 31 F.3d  at 878 (Finding a violation of the Fourth Amendment when "officers conducted the detention of [a suspect] in a wholly unreasonable manner—a manner that wantonly and callously subjected an obviously ill and incapacitated person to entirely unnecessary and unjustifiable degradation and suffering.")

## III.  CONCLUSION

The Court GRANTS Defendants Motion as and awards summary judgment in favor of Defendants with regard to Plaintiffs' following causes of action:

- First (Conversion)
- Second (Battery)
- Sixth (Petition For Return of Property)
- Seventh (Excessive Force)
- Eighth (Wrongful Search & Seizure)
- Ninth (Wrongful Taking)

The following causes of action remain in this case:

- Third (False Imprisonment)
- Fourth (Abuse of Process)
- Fifth (Negligence)
- Tenth (Wrongful Detention)

**IT IS SO ORDERED.**

DATED: November 19, 2014

_____

CONSUELO B. MARSHALL

UNITED STATES DISTRICT JUDGE